**Robert B. GROVE**

v.

**The FIRST NATIONAL BANK OF HERMINIE.**

**Civ. A. No. 72–161.**

United States District Court,
W. D. Pennsylvania.

Dec. 20, 1972.

Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiff.

Houston, Cooper, Speer & German, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

GOURLEY, Senior District Judge.

In this civil non jury proceeding jurisdiction exists pursuant to the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa and 28 U.S.C.A. § 1331. After a full and complete trial and consideration of the briefs and argument of counsel, it must be concluded that judgment should be entered in favor of the plaintiff and that no recovery is warranted on defendant's counterclaims.

Plaintiff seeks damages for alleged violations of Regulation U (12 C.F.R. § 221) promulgated by the Board of Governors of the Federal Reserve System pursuant to 15 U.S.C.A. § 78g. As a member of the Federal Reserve System, defendant bank is subject to this regulation. The damages result from loans made by defendant to plaintiff in excess of the allowable loan limits either for the purchase of stock or to pay off prior loans

made for the purchase of stock. The loan limitations contained in the Regulation for the period involved were as follows: November, 1963, to June 7, 1968, 30% of the value of the stock; June 8, 1968, to May 5, 1970, 20%; May 6, 1970, to December 3, 1971, 35%. In other words, a bank would be in violation of Regulation U if it loaned amounts in excess of these percentages to purchase stock or to pay off loans previously made to purchase stock if it knew or had reason to believe that the loans to its customer were being so used. Defendant has counterclaimed for the balance due on the loans made to plaintiff. In a second counterclaim, defendant asserts that plaintiff supplied collateral which he purportedly misrepresented to be worth five times its actual value, causing a loss to defendant when the stock was sold out.

The facts may be briefly stated. Plaintiff is an individual who has completed the ninth grade of school and maintains a used car lot for his livelihood. Although plaintiff seeks damages related only to five different loans from October 23, 1967, to September 8, 1970, he has dealt with defendant bank in obtaining loans since April 2, 1965.[1] Plaintiff knew personally one John Pittavino, a former school acquaintance, who was the cashier at the bank at the time Grove began to obtain loans from defendant and until his death on February 28, 1971. It was Mr. Pittavino who had arranged all of the loans made by defendant to plaintiff. In the course of these dealings Mr. Pittavino did not explain to plaintiff that according to federal law, the bank could lend only a certain percentage of the market value of stock to purchase registered securities. Indeed, although there is conflicting testimony, it appears that no one, including other loan officers at other banks, ever made it clearly understood to plaintiff that Regulation U forbade the course of conduct by which he borrowed bank funds to buy registered stock or to pay off prior loans made for

---

1. The loans in question were made as follows: October 23, 1967—$5,000; November 1, 1968—$99,300; December 2, 1969— $8,000; March 3, 1970—$7,000; September 8, 1970—$2,500.

such purposes. In fact, not one of the bank officers could adequately demonstrate that as a loan officer he personally understood the margin requirements of Regulation U at the time of dealing with plaintiff. The practices followed by defendant in connection with the loans extended to Mr. Grove also leave a great deal to be desired. Numerous Regulation U statements, which a lending bank is required to obtain from a customer setting forth the purpose of the loan, were never produced nor was the nonproduction ever explained. The reasonable inference to be drawn is that they were never prepared. This tends to substantiate plaintiff's position that no one at the bank ever explained or discussed Regulation U with him and that he had no actual knowledge of its requirements during the course of his negotiations with defendant. While it is true that there was an air of secrecy surrounding the loans made by defendant to plaintiff, that secrecy was created by Mr. Pittavino, who told Mr. Grove, "I want to tell you, I don't mention the stock market around anybody else here." His reason for this was that he would be criticized for lending money to people outside the bank's community for speculation, when a need existed for home-building funds in the area. With one exception, the Regulation U forms, the purpose of which is to insure that proper margin requirements are being observed, were signed in blank by plaintiff. In the one exception, Mr. Pittavino directed plaintiff to write in the purpose of the loan as being for inventory.

Although the Securities Exchange Act of 1934 does not provide a private cause of action for violation of Regulation U margin requirements, there is an implied cause of action. Goldman v. Bank of Commonwealth, 467 F.2d 439 (6th Cir. 1972); Remar v. Clayton Securities Corp., 81 F.Supp. 1014 (D.Mass. 1949). There is a violation of Regulation U when a bank has actual knowledge that the proceeds of the loans are being used to purchase registered securities or to carry securities [2] or when in the exercise of reasonable care it should have known that the proceeds of the loans were being used for the purpose of purchasing registered securities. Serzysko v. Chase Manhattan Bank, 290 F.Supp. 74 (S.D. N.Y.1968) aff'd 409 F.2d 1360 (2d Cir. 1969), cert. den. 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969). It seems clear that defendant bank, through its agent and cashier, John Pittavino, had actual knowledge that the proceeds of the loans were being used almost totally for the purpose of carrying or purchasing registered securities. At the very least, the bank through the exercise of reasonable care should have known that the proceeds were being used in this manner. As noted previously, Pittavino knew Grove personally and should have known that the loans were not being obtained for use in connection with plaintiff's limited used car business. Moreover, the bank frequently loaned money to plaintiff without requiring him to deliver the stock collateral on the day the loan was made. In one instance the defendant received delivery of the collateral directly from a stock broker. In view of these facts, there unquestionably was a violation of Regulation U entitling plaintiff to recover for the losses engendered thereby; plaintiff did not have sophisticated information regarding Regulation U which he advantageously and deceitfully employed. See Serzysko, supra, and Goldman, supra. Indeed Grove falls within the class of persons whom the Securities Exchange Act of 1934 was designed to protect. As stated in the Remar case, supra, "In short, the intent of the [Securities and Exchange Act] was in part to protect an individual like plaintiff from losing his equities in stocks pledged to a broker, dealer or bank, due to his

2. 12 C.F.R. § 221.3(b) provides that carrying a security is the act of reducing or retiring indebtedness incurred to purchase a margin stock.

having a lower margin than the level approved by the Federal Reserve Board." Plaintiff's loss should be computed by measuring the decline in value of the registered stock from the dates they were pledged to the date (August 16, 1971) they were sold by defendant. That amount has been stipulated by counsel to be $67,367.49.

With respect to defendant's first counterclaim in which recovery is sought for the balance due on the loans, it is clear that plaintiff's liability thereon was rescinded by filing the instant action. The Securities Exchange Act of 1934 provides that contracts made in violation of any regulation promulgated pursuant to the Act shall be void. As pointed out in Goldman v. Bank of Commonwealth, 467 F.2d 439 at 446 (6th Cir. 1972), the demand notes were voidable, and plaintiff, by filing this suit, elected to rescind them. No liability exists, therefore, for any balance due on the loans. Regarding the second counterclaim, it is the considered judgment of the Court that no cause of action for misrepresentation or deceit exists; no evidence exists to substantiate defendant's claim that plaintiff deceived the bank or misrepresentated the value of Studebaker-Packard Corporation stock pledged as additional security. Plaintiff did not represent this stock to be the equivalent of Studebaker-Worthington Incorporated, which had a value five times greater than the stock actually pledged. Thus defendant should not recover on either of its counterclaims. Plaintiff, on the other hand, should recover for the decline in value of the stock when pledged compared to its value when the bank sold out plaintiff's collateral.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.