**John E. JENNINGS and Helen M. Jennings**

v.

**BOENNING & COMPANY and Boenning & Scattergood, Inc., Appellants.**

**No. 72–1970.**

United States Court of Appeals, Third Circuit.

Argued May 24, 1973.

Decided July 16, 1973.

Certiorari Denied Nov. 12, 1973.

See 94 S.Ct. 450.

L. Carter Anderson, Rawle & Henderson, Philadelphia, Pa., for appellants.

Edward Fackenthal, Henderson, Wetherill, O'Hey & Horsey, Norristown, Pa., for appellees.

Before ALDISERT and ADAMS, Circuit Judges, and STAPLETON, District Judge.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In the midst of an action seeking damages for violation of the Securities Exchange Act of 1934, the district court, 352 F.Supp. 1000, issued a preliminary injunction restraining the appellant Boenning from executing on a state court judgment entered by confession six years prior to commencement of the federal action. This appeal requires an interpretation of the Securities Exchange Act of 1934 and the federal Anti-Injunction Act to determine the propriety of the district court's action.

John E. Jennings, a stockbroker in the employ of the Boenning Company, purchased for the account of his wife, Helen Jennings, certain Eastern Airlines debentures on February 9, 1966, and certain Rohr Aircraft debentures on January 18, 1966. The Jennings did not make full cash payment for the order within 7 days of purchase. Regulation T of the Federal Reserve Board, 12 C. F.R. § 2204(c)(2), promulgated pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78g(a), requires that where "a customer purchases a security (other than an exempted security) in the special cash account and does not make full cash payment for the security within 7 days after the date on which the security is so purchased, the creditor shall, . . . [with exceptions not pertinent here], promptly cancel or otherwise liquidate the transaction or the unsettled portion thereof."

Boenning sold the Eastern securities on March 1, 1966, and the Rohr securities on March 2 and 3, 1966. During the time the securities were held beyond the 7 day period permitted under Regulation T, the fair market value of the securities decreased by $32,175. This decrease in value when credited against Helen's account resulted in a deficit of $30,500.00 for which Boenning demanded and received from John and Helen Jennings a judgment note. On April 14, 1966, judgment by confession was entered against the Jennings in the Court of Common Pleas, Montgomery County, Pennsylvania. Three years later the Jennings attempted to open the judgment, but were rebuffed by the trial court and the Pennsylvania appellate court on the theory of laches. Boenning & Co. v. Jennings, 222 Pa.Super. 712, 294 A.2d 739 (1972).

Thereafter the Jennings filed a complaint in federal district court against Boenning seeking damages for "violation

of the margin requirements of the Securities Exchange Act of 1934," 15 U.S.C. § 78g(c); 15 U.S.C. § 78cc.

During the course of the proceedings below the Jennings obtained a preliminary injunction restraining Boenning from executing on the judgment entered by the Montgomery County Court of Common Pleas. While the district court noted both the Federal Anti-Injunction Act, 28 U.S.C. § 2283, and the admonition of the Supreme Court of the United States in Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970), that "any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld . . . [and] the exceptions should not be enlarged by loose statutory construction," it found two such exceptions. The court concluded it was specifically authorized by § 21(e) of the Securities Exchange Act, 15 U.S.C. § 78u(e), to issue the injunction in this case. *See* Studebaker Corp. v. Gittlin, 360 F.2d 692, 696–698 (2d Cir. 1966). Furthermore, the court was also of the opinion that the second exception provided in the Federal Anti-Injunction Statute for injunctions "necessary in aid of" the jurisdiction of the district court likewise enabled the court to issue the relief requested. We hold that the district court erred in both conclusions and reverse.

### I.

The district court's reliance on the Second Circuit's *Studebaker* case was misplaced. There, the enjoined state proceeding was one to inspect a corporation's stockholder list. The federal court's order enjoined the use of other stockholders' authorizations in the state action until there was compliance with the Proxy Rules of the Securities and Exchange Commission promulgated under § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a).

Section 21(e) of the Securities Exchange Act provides:

Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule or regulation thereunder, it may . . . bring an action . . . to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. · · ·

15 U.S.C. § 78u(e).

The very continuance of the state court action in *Studebaker* constituted a "violation of the provisions" of the Proxy Rules issued under a specific provision of the Securities Exchange Act, *i. e.*, § 14(a), 15 U.S.C. § 78n(a). Drawing on the authority of J. I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 1558, 12 L.Ed.2d 423 (1964), that a private suit was "a necessary supplement to Commission action," the Second Circuit held that section 21(e) was an exception to the Anti-Injunction Statute, 28 U.S.C. § 2283, "expressly authorized by Act of Congress." Thus, in *Studebaker*, the injunction was justified solely because it sought to terminate a state court action which by its very nature furthered "a violation of the provisions of" the Securities Exchange Act. Certainly, *Studebaker* qualified under the test subsequently set forth in Mitchum v. Foster, 407 U.S. 225, 238, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972): "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding."

■ By contrast, there is no impediment to the prosecution of the Jennings' claim for damages in federal district court by reason of the Montgomery County judgment. It was the Jennings' theory that violation of the margin requirements of Federal Reserve Regula-

tion T was actionable under § 7(c) of the Securities Exchange Act. *See* Pearlstein v. Scudder & German, 429 F. 2d 1136 (2d Cir. 1970). Without reaching the question whether this court would adopt the view of the *Pearlstein* majority, *see, e. g.,* the dissenting opinion of Chief Judge Friendly, 429 F.2d at 1145–1149, we are persuaded that even if the Jennings have a proper cause of action for damages, the presence of the state court judgment did not constitute an impediment to the assertion of "the federal right or remedy." The state judgment emanated from a contractual relationship between the parties cognizable by a state court. The continuance of a proceeding concerned solely with that relationship did not constitute a furtherance of an ongoing violation of the Securities Exchange Act so as to necessitate operation of § 21(e).

Our conclusion is buttressed by the Second Circuit's interpretation of its own *Studebaker* decision in a case on its facts closely resembling the case before us. In Vernitron Corp. v. Benjamin, 440 F.2d 105 (2d Cir. 1971), Benjamin had contracted with Vernitron to transfer all the stock of Benjamin's wholly-owned corporation to Vernitron in return for shares of Vernitron. After Benjamin had received a portion of the promised shares, Vernitron failed to deliver the balance, and Benjamin instituted a state court action alleging breach of contract. Vernitron counterclaimed alleging breaches of warranty and demanding rescission of the contract. Vernitron simultaneously commenced an action in federal court asserting essentially its state court counterclaim and also pleading violations of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78cc(b), as well as common law fraud. As the Jennings do here, Vernitron there relied on § 21(e) as an express statutory exception to the Anti-Injunction Act. In reversing the granting of the injunction by the district court, the Second Circuit reasoned that the prosecution of the state court action did not amount to conduct by persons

"engaged or about to be engaged" in acts in violation of the Securities Exchange Act. The plain wording of that statute would seem to foreclose Vernitron's contention. Moreover, Studebaker Corporation v. Gittlin, 360 F.2d 692 (2 Cir. 1966), relied upon by Vernitron is inapposite in that the prosecution of the state action there relevant would itself have furthered the violation of the Securities Exchange Act.

440 F.2d at 108.

We accept this reasoning and hold that § 21(e), 15 U.S.C. § 78u(e), is inapplicable to the facts of this case. Hence, the district court erred in applying it as an express statutory exception to the Anti-Injunction Act.

## II.

Essential to any inquiry into the authorization for a federal court injunction of state court proceedings as "necessary in aid of [the federal court's] jurisdiction," is an understanding of the historical background of this statutory exception to the Anti-Injunction Act.

The starting point must be a recognition that federalism is a constitutional concept. "[T]he constitution of the United States . . . recognizes and preserves the autonomy and independence of the states,—independence in their legislative and independence in their judicial departments. Supervision over either the legislative or the judicial action of the states is in no case permissible except as to matters by the constitution specifically [sic] authorized or delegated to the United States. Any interference with either, except as thus permitted, is an invasion of the authority of the state, and, to that extent, a denial of its independence." Erie R. R. v. Tompkins, 304 U.S. 64, 78–79, 58 S.Ct. 817, 822–823, 82 L.Ed. 1188 (1938), quoting Mr. Justice Field in Baltimore & Ohio R. R. v. Baugh, 149 U.S. 368, 401, 13 S.Ct. 914, 37 L.Ed. 772 (1893). Fortunately, American courts are heirs to a long standing principle of the common law which finds its historical foun-

dation in the forbearance through which courts exercising coordinate jurisdiction in the name of a single sovereign refrained from interfering with the process of one another and, thereby, direct conflicts with each other were avoided. The utility produced by this concord was alone sufficient justification for its continued existence. "[B]ut between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior." Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390 (1884).[1]

Where the proceeding is *in rem* and involves a "thing" or *res*, "[i]t is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted." Baltimore & Ohio R. R. v. Wabash R. R., 119 F. 678, 679 (7th Cir. 1902), quoted in Kline v. Burke Constr. Co., 260 U.S. 226, 231, 43 S.Ct. 79, 67 L.Ed. 226 (1922).

 The rule is otherwise in actions for a personal judgment. A controversy is not a *res*, and a controversy over a mere question of personal liability does not involve the possession or control of a *res*. Therefore, an action to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Both courts are free to proceed, each in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one court it may be pleaded in the other, and the effect of that judgment determined by the application of the principles of *res judicata* by the court in which the action is still pending. This determination is made as any other question of fact or law arising in the progress of the case would be resolved. "The rule, therefore, has become generally established that where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded." Kline v. Burke Constr. Co., *supra*, 260 U.S. at 230, 43 S.Ct. at 81.

It is widely recognized that overlapping categories of subject-matter competence does not of itself create conflict of jurisdiction in particular cases. Such overlap, however, provides the arena in which such conflicts may occur. Actual conflict of jurisdiction arises only when two courts, both having or claiming subject matter jurisdiction, attempt concurrently or successively to entertain litigation involving the same subject matter itself—for example, the same transaction or title to the same property. R. Forrester, T. Currier and J. Moye, Federal Jurisdiction and Procedure 457 (2d Ed.1970).

 That an actual conflict exists does not mean that either court, without more, may enjoin proceedings in the other. "[F]ederal courts have long been held to be barred by the predecessor of

1. Conflict of jurisdiction between the federal and state judicial systems arises from the Supreme Court's original and appellate jurisdiction, from the dual system of original jurisdiction in the state courts and in the federal district courts, and from the removal jurisdiction of the latter courts.

 State courts derive their existence, functions and, in the main, their judicial power from the laws of their respective sovereign states; but the Constitution, laws and treaties of the United States constitute the supreme law of the land. . . . The "courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent."

 1A J. Moore, Federal Practice, ¶ 0.201, at 2017 (2d Ed. 1965).

28 U.S.C. § 2283 from enjoining parties from prosecuting pending in personam proceedings in a state court merely on the ground of duplication or overlapping of proceedings previously begun and still pending in the federal court." P. Bator, P. Mishkin, D. Shapiro and H. Wechsler, Hart and Wechsler's, The Federal Courts and the Federal System 1235 (2d Ed.1973).

Against the backdrop of these principles we trace the development of the "necessary in aid of . . . jurisdiction" phrase which first appeared in the 1948 amendment to the 1911 version of the federal Anti-Injunction Act. In Toucey v. New York Life Ins. Co., 314 U.S. 118, 133, 62 S.Ct. 139, 143, 86 L.Ed. 100 (1941), Justice Frankfurter, in discussing removal of actions from state courts, referred to the principle later to be encompassed in this phrase, stating that the Anti-Injunction Act "has always been deemed inapplicable to removal proceedings."[2]

The 1948 revision to the Anti-Injunction Act was comprehensive. As Justice Frankfurter observed in Amalgamated Clothing Workers of America v. Richman Bros. Co., 348 U.S. 511, 514, 75 S. Ct. 452, 454, 99 L.Ed. 600 (1955):

We need not re-examine the series of decisions, prior to the enactment of Title 28 of the United States Code in 1948, which appeared to recognize implied exceptions to the historic prohibition against federal interference with state judicial proceedings. See Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100. By that enactment, Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation. Former § 265 of the Judicial Code provided:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." 36 Stat. 1162.

The 1948 enactment revised as well as codified. The old section was thus embodied in the new § 2283:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The legislative history to the 1948 amendment embodied in the Revisor's Notes, 28 U.S.C.A. § 2283, discloses: "The phrase 'in aid of its jurisdiction' was added to conform to section 1651 of this title [All Writs Statute] and to make clear the recognized power of the Federal courts to stay proceedings in State cases removed to the district courts."

We now turn to the case at bar and the reasoning of the district court. Relying on *Pearlstein,* the court found federal question jurisdiction and a remedy available. Since there was federal jurisdiction, the court concluded there was also power and authority to restrain the state court proceedings. In addition, the district court found that the state court lacked jurisdiction to determine the validity of the note based on violations of the Securities Exchange Act of 1934 because federal jurisdiction is exclusive. This holding was based on a misreading of Moran v. Paine, Webber, Jackson & Curtis, 279 F.Supp. 573, 579 (W.D.Pa.1967), aff'd. 389 F.2d 242 (3d Cir. 1968).

---

2. *Toucey* held that a federal court had no power to stay a proceeding in a state court simply because the claim in controversy had previously been adjudicated in the federal court. The Congressional response to *Toucey* was the insertion of the clause "to protect or effectuate its judgments." The Revisor's Notes to § 2283, enacted in 1948, state that these words were included "for lack of which the Supreme Court held that the Federal courts are without power to enjoin relitigation of cases and controversies adjudicated by such courts."

Moran simply states that there is exclusive jurisdiction in the federal courts with respect to claims brought under the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, while concurrent federal and state jurisdiction exists with respect to claims arising out of the Securities Act of 1933, 15 U.S.C. § 77v. Moran v. Paine, Webber, Jackson & Curtis, *supra*, 279 F.Supp. at 577, aff'd, 389 F.2d at 245. Regrettably, the district court failed to recognize the distinction between asserting a *claim* in state court based on a federal statute and interposing a *defense* there based on such a statute. The distinction is important in many aspects of federal jurisprudence. For example, a claim based on a federal question filed in a state court may be removed to the federal court upon petition. However, the assertion of a defense based on federal constitutional or statutory law which is raised to a state-based claim will not in itself justify removal to a federal forum. Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894). 28 U.S.C. § 1441.[3]

Here, the state court action was purely and simply one based on contract evidenced by a promissory note containing a confession of judgment clause. It was not a claim based on a federal statute, let alone a federal statute which conferred exclusive jurisdiction in the federal courts. *E. g.*, 29 U.S.C. § 158(b); *see*, Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953).

It is hornbook law that the Courts of Common Pleas of the State of Pennsylvania have jurisdiction in proceedings to enforce promissory notes. The district

court's observation that the Pennsylvania courts lack jurisdiction to determine the validity of a state-based claim in those cases in which a defense is based on the Securities Exchange Act of 1934 is a statement diametrically opposed to the law of that state as it has been pronounced by the Pennsylvania Supreme Court. Davis v. Pennzoil Co., 438 Pa. 194, 264 A.2d 597 (1970), affirmed a summary judgment in favor of the defendant entered by the late, distinguished Court of Common Pleas Judge, David Olbum, who accepted the defendant's contention that plaintiff's claim was foreclosed by reason of violations of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78cc(b).

Moreover, the district court relied on a truncated excerpt of the *Atlantic Coast Line Railroad* case when it set forth a definition of the phrase "necessary in aid of . . . jurisdiction."[4] What the Supreme Court did say was this:

[I]f the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be *"necessary in aid of"* that jurisdiction. While this language is admittedly broad, we conclude that it implies something similar to the concept of injunctions to "protect or effectuate" judgments. Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.

3. The A.L.I. Study would permit removal if the amount in controversy is in excess of $10,000. The American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, § 1312(2).

4. The district court stated:
 In discussing the applicability of the "necessary in aid" of jurisdiction exception in the anti-injunction statute, the

Supreme Court of the United States in *Atlantic Coast Line Railroad, supra*, stated that an injunction is "necessary in aid of" jurisdiction when it is:
 necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. 398 U.S. at 295, 90 S.Ct. at 1747.

Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers, *supra*, 398 U. S. at 295, 90 S.Ct. at 1747, 26 L.Ed.2d 234.[5]

Applying these teachings to the matter before us, we emphasize first that here there was no *federal* court judgment to protect. At issue was a *state* court judgment. Second, we do not understand how a state court judgment obtained six years prior to the filing of a claim in federal court "can seriously impair the federal court's flexibility and authority to decide that case." As the Court said in Kline v. Burke Constr. Co., *supra*, 260 U.S. at 230, 43 S.Ct. at 81, 67 L.Ed. 226: "[T]he effect of that judgment is to be determined by the application of the principles of *res adjudicata* by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case."

Discussing the effect of the 1948 amendment to the Anti-Injunction Act, Professor Charles Alan Wright observes:

It is clear, too, that the exception, recognized even in the Toucey case, permitting an injunction against a later state action involving property in the custody of the federal court has survived the 1948 revision, presumably under the guise of "in aid of its juris-

diction." But what of the corollary under the old law that an injunction could not issue to restrain a state action in personam involving the same subject matter from going on at the same time? This was settled law before and after Toucey, and it now seems clear that it remains the law.[6]

■ In sum, the case comes to this. A state action was commenced by filing a judgment note. The state court defendants could have timely moved to open the judgment on the *Pearlstein* theory they now press in the federal courts. The state courts may or may not have accepted the doctrine of this defense. In any event, it had the power to do so. Davis v. Pennzoil Co., *supra*. When the state court defendants got around to interposing this defense, the state courts held them barred by laches. They then came to a federal forum and asserted a claim for money damages. Under these circumstances, assuming without deciding that they have a proper claim for money damages, the federal Anti-Injunction Act prevents the issue of an injunction restraining state proceedings to enforce the state judgment. Accordingly, we hold that the district court lacked jurisdiction to issue the injunction.[7]

The judgment of the district court will be reversed and the proceedings remanded with a direction to vacate the injunction order.

5. This statement must be read in conjunction with the 1948 legislative purpose of the "necessary in aid of" jurisdiction clause. There, as we previously indicated, the Revisor's Note, 28 U.S.C.A. § 2283, states that this phrase "was added to conform to section 1651 of this title [All Writs Statute] and to make clear the recognized power of the Federal courts to stay proceedings in State cases removed to the district courts." See United States v. Kenny, 462 F.2d 1230 (3d Cir. 1972), for a discussion and application of these principles in the context of a state criminal proceeding.

6. C. Wright, Federal Courts, § 47 at 180 (2d Ed. 1970), citing Hyde Constr. Co. v. Koehring Co., 388 F.2d 501 (10th Cir.

1968), cert. denied, 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419; Hayes Industries, Inc. v. Caribbean Sales Associates, Inc., 387 F.2d 498 (1st Cir. 1968); Lankenau v. Coggeshall & Hicks, 350 F.2d 61 (2d Cir. 1965). Accord, Vernitron Corp. v. Benjamin, 440 F.2d 105 (2d Cir. 1971). American Ins. Co. v. Lester, 214 F.2d 578 (4th Cir. 1954), is apparently to the contrary, but can be distinguished, as it was in the *Hyde* case, 388 F.2d at 509.

7. Because the parties to this appeal have not raised the issue, we have assumed, without deciding, that an injunction against execution of a state court judgment is an injunction against a "pending state proceeding."