Robert B. GROVE, Appellee,

v.

The **FIRST NATIONAL BANK OF HERMINIE**, Appellant.

No. 73–1172.

United States Court of Appeals,
Third Circuit.

Argued Sept. 21, 1973.

Decided Dec. 12, 1973.

As Amended Jan. 21, 1974.

Harry J. Gruener, David R. Brown, Litman, Litman, Harris & Specter, P. A., Pittsburgh, Pa., for appellee.

Ralph H. German, Thomas E. Lippard, Houston, Cooper, Speer & German, Pittsburgh, Pa., for appellant.

Before FORMAN, ALDISERT and GARTH, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM:

Plaintiff-appellee Grove sought damages alleging violations of Federal Reserve margin requirements (Regulation U: 12 CFR § 221) promulgated pursuant to the Securities Exchange Act of 1934, 15 U.S.C.A. § 78g. Jurisdiction is asserted under 15 U.S.C.A. § 78aa.

### I.

In a non-jury proceeding, the trial court found that the defendant-appellant First National Bank of Herminie, (hereinafter "Bank") had violated Regulation U, and awarded damages in the amount of $67,367.49 to the plaintiff. In addition, the court dismissed defendant's counterclaims seeking recovery for loans made by the Bank to plaintiff, and for damages resulting from alleged misrepresentations by the plaintiff. Challenging both findings of fact and conclusions of law, the defendant appeals pursuant to 28 U.S.C.A. § 1291.

The trial court found the following facts recited in its opinion: Plaintiff, whose formal education was terminated after the 9th grade, was a used car repairman and salesman. His dealings with the Bank in obtaining loans commenced April 2, 1965, but the damages sought in this action relate only to five loans, as follows: October 23, 1967 $5,000; November 1, 1968 $99,300; December 2, 1969 $8,000; March 3, 1970 $7,000; September 8, 1970 $2,500.

The loan limitations established by Regulation U for the periods involved were:

November 1963 to June 7, 1968—30% of the value of the stock;

June 8, 1968 to May 5, 1970—20% of the value of the stock;

May 6, 1970 to December 3, 1971—35% of the value of the stock.[1]

The trial court found that Grove personally knew the Bank cashier (John Pittavino) at the time that he [Grove] began to obtain stock-collateralized loans from the Bank and that the relationship continued until Pittavino's death in February 1971. Pittavino, a former school acquaintance of Grove's, arranged the loans made by the Bank to plaintiff. In the course of these dealings he [Pittavino] did not explain to plaintiff that according to federal law, the Bank could lend only a certain percentage of the market value of stock to purchase registered securities.[2] No one at the Bank, or at other banks at which plaintiff borrowed monies against stock collateral, ever made it clearly understood to plaintiff that Regulation U proscribed plaintiff's dealings by which he borrowed bank funds to buy registered stock or to pay off prior loans made for such purposes.

At trial, not one of the defendant Bank officers could adequately demonstrate that as a loan officer he understood the margin requirements of Regulation U at the time of dealing with the plaintiff. With only one exception, the Regulation U forms were signed in blank by plaintiff. The one exception to that practice occurred when Pittavino directed Grove to write in the purpose of the loan as being for inventory. Further, the Bank frequently loaned money

---

1. A bank would be in violation of Regulation U if it loaned amounts in excess of the percentages noted to purchase stock or to pay off loans previously made to purchase stock, if it knew or had reason to believe that the loans to its customers were being so used.

2. See: 12 C.F.R. § 221.1 et seq.

to Grove without even requiring him to deliver the collateral on the day that the loan was made. In one instance the Bank received delivery of the collateral directly from a stock broker. The Court found that the Bank had constructive as well as actual knowledge (through its cashier, Pittavino) that the proceeds of the loans were being used by plaintiff almost totally for the purpose of carrying or purchasing registered securities, rather than for any purpose related to Grove's small used car business. The court thereupon concluded, and the record supports the conclusion, that the Bank violated Regulation U.[3]

The trial court also found that the plaintiff did not have "sophisticated information regarding Regulation U which he advantageously and deceitfully employed see Serzysko, supra and Goldman, supra." [4] Further, with respect to the counterclaims asserted by the Bank, the court found that the filing of the instant district court action constituted an election by Grove to rescind his loans, thereby terminating any liability on the loans, and that there was no evidence to substantiate any claim by the Bank that Grove had deceived the Bank or had misrepresented the value of certain Studebaker-Packard stock which had been pledged by him as additional security.

## II.

At no time has the appellant Bank disputed the theory under which plaintiff has brought his action. Indeed by concession in its brief [5] and at oral argument, appellant has removed this issue from our consideration. We therefore do not meet the question of the propriety of the implied tort theory of recovery. In Jennings v. Boenning & Co., 482 F.2d 1128 (3d Cir. 1973), discussing the Second Circuit decision in Pearlstein v. Scudder & German, 429 F.2d 1136 (1970), we reserve the question "wheth-

---

3. With regard to the five loans for which plaintiff seeks damages, the following chart indicates the disparity between plaintiff's ratio of indebtedness to collateral and the Federal Reserve's margin requirements, (which requirements apply only with regard to credit secured by stock and obtained for the purpose of purchasing or carrying registered stock, 12 C.F.R. § 221.1(a)):

| Date of loan and amount | Total indebtedness at date of loan | Total collat. at date of loan | % of loan to value of collat. | Fed. Res.: max. loan value of collat. |
|---|---|---|---|---|
| 10/23/67—$5,000 | $ 50,783 | $108,534 | 46% | 30% |
| 11/1/68—$99,300 | $ 75,683 | $147,712 | 51% | 20% |
| 12/2/69—$8,000 | $117,276 | $154,416 | 75% | 20% |
| 3/3/70—$7,000 | $111,617 | $117,335 | 95% | 20% |
| 9/8/70—$2,500 | $118,038 | $ 86,528 | 136% | 35% |

---

4. Serzysko v. Chase Manhattan Bank, 290 F.Supp. 74 (S.D.N.Y.1968) aff'd. 409 F.2d 1360 (2d Cir. 1969), cert. denied 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969); Goldman v. Bank of Commonwealth, 467 F. 2d 439 (6th Cir. 1972).

5. "Had there been adequate believable evidence in the record to support these conclusions as to the fact of violations, Herminie could not dispute the legal correctness of these conclusions under the cited authorities." (Appellant's Brief, 10.) Appellee had relied upon Goldman v. Bank of the Commonwealth, supra; Serzysko v. The Chase Manhattan Bank, supra; and Remar v. Clayton Securities Corp., 81 F.Supp. 1014 (Mass. 1949). See also Cooper v. Union Bank, 354 F.Supp. 669 (D.C.Calif.1973); Tartell v. Chelsea National Bank, 351 F. Supp. 1071 (S.D.N.Y.1972).

er this court would adopt the view of the *Pearlstein* majority, *see, e. g.,* the dissenting opinion of Chief Judge Friendly, 429 F.2d at 1145–1149 . . . ." Because this appeal presents no controversy on this issue, we continue to reserve the question of whether a party under a Regulation "T" or "U" transaction may maintain a private cause of action. Appellant's concession requires us to proceed on the assumption that such a cause of action is available.

Our scope of review of the findings made by the trial court is set forth in F.R.Civ.P. Rule 52(a), which provides: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The gist of appellant's argument on this appeal—that plaintiff's testimony was substantially contradicted and therefore is untrustworthy—has little merit when directed to an Appellate Court. Credibility is a matter to be determined by the trial judge, and not by the Court of Appeals. Speed v. Transamerica Corporation, 235 F.2d 369, 373 (3d Cir. 1956).

"It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972). The facts found by the district court are fully supported in the record, and we cannot say that they are clearly erroneous.

Among other contentions, the Bank argues that (1) no causal relationship has been proved between the Regulation U violations and the damages claimed by Grove; and (2) the trial court erred in the "formula" it utilized in determining damages.

Our review of the record satisfies us that the causal relationship essential to the trial court's award of damages was amply demonstrated.

As to the damage award itself, the Bank claims that the plaintiff has realized a "profit" by virtue of the manner in which the trial court formulated damages. We cannot agree.

The trial court computed the plaintiff's damages by measuring the decline in value of the registered stock pledged by Grove (with the Bank), from the dates on which the stock was pledged, until the date on which the stock was sold.[6] The parties stipulated that under such a "formula" the amount of damages would be $67,367.49.

Contending that Grove is made whole if he receives the difference between the value of the total collateral pledged ($161,641.66) and the amount loaned to Grove ($118,806.62), the Bank argues that the damage award, exceeding this difference by $24,532.45, contains an unauthorized "profit".[7] The amount asserted by the Bank to be a profit is also the amount that the Bank lost in its transactions with Grove, and is the subject of the Bank's first counterclaim.

If we were to accept the Bank's argument, it would have the effect of permitting the Bank to recover its claim for deficiency against the plaintiff despite the dismissal of its counterclaim. Such a result is contrary to the Congressional policy which provides, in pertinent part, that:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . heretofore

---

6. At trial, the Bank proposed no theory of damages other than what could be inferred from its claim for the deficiency. The plaintiff's evidence contrasted the value of his securities *on the dates pledged to the Bank* with the *value on sell-out.* (Plaintiff's Exhibit 51). We therefore limit our opinion as to the correctness of the district court's measure of damages to the contentions and theories presented and the evidence at trial.

7. The Bank asserts that such a "profit" is unauthorized because the function of tort damages is normally to restore the injured party to his "pre-tort" position.

or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract . . .

15 U.S.C. § 78cc(b). The effect of this provision is to preclude a lending bank from recovering a deficiency where the bank has violated Regulation U. Cooper v. Union Bank, *supra*. Such a recovery may be precluded even if the borrower knowingly and intentionally deceives the bank as to the actual purposes of the loans. *See* Serzysko v. Chase Manhattan Bank, *supra*; *but cf.* Goldman v. Bank of Commonwealth, *supra*. Since the Bank is precluded from recovering its deficiency, the method of damages computation suggested by it cannot be sustained. The record supports the damages awarded by the trial court.

The judgment of the district court will be affirmed.[8]

McLaughlin, Circuit Judge, dissented and filed opinion.

---

8. Other contentions raised by the appellant have been considered by the court and rejected.