Michael J. **DALEY**

v.

**CAPITOL BANK AND TRUST COMPANY.**

Civ. A. No. 71–2398–C.

United States District Court,
D. Massachusetts.

June 20, 1974.

Philip J. Murphy, Murphy & Pusateri, Fitchburg, Mass., for plaintiff.

James R. DeGiacomo, Roche, Carens & DeGiacomo, Boston, Mass., for defendant.

## OPINION

CAFFREY, Chief Judge.

This is a civil action which was tried to the Court. Plaintiff seeks rescission of a loan agreement made by him with defendant bank and, also, damages for alleged violations of the margin and retention requirements of the Securities Exchange Act of 1934. Plaintiff is a citizen of Massachusetts. Defendant is a trust company organized under the laws of Massachusetts with a principal place of business in Boston. Jurisdiction of this Court is invoked on the basis of 28 U.S.C.A. § 1331 (federal question) and 15 U.S.C.A. § 78aa.

This case arises out of the execution between the parties of four separate loan transactions which were later consolidated into one loan, in connection with which defendant extended credit to plaintiff on the basis of security consisting of common stock. Plaintiff contends that the loan transactions were processed by defendant in such a manner that they failed to meet the margin and retention requirements contained in Regulation U (12 C.F.R. 221) promulgated pursuant to 15 U.S.C.A. § 78g by the Board of Governors of the Federal Reserve system. Plaintiff further contends that this non-compliance with Regulation U renders the loans voidable at his election and that his filing of the instant case constituted an election by him to rescind his loans which election terminated any liability thereon. For this latter proposition plaintiff cites Grove v. First National Bank of Herminie, 489 F.2d 512 (3 Cir. 1973).

In its answer, defendant denied that the procedure followed with respect to these loans violated the provisions of Regulation U. Defendant further asserts that even if Regulation U were violated, no private recovery is available to plaintiff because plaintiff's losses were not a proximate result of such violations. Defendant also contends that plaintiff himself engaged in culpable conduct as a result of which his recovery should be barred by the equitable doctrine of unclean hands. Additionally, defendant has counterclaimed herein for judgment against plaintiff for the balance allegedly due and owing on the notes.

The parties have stipulated the following facts:

1. On December 23, 1968, plaintiff executed a note payable to defendant in the face amount of $80,000. This note was secured by stock. On the same day, defendant issued a check in the amount of $80,000 payable to The Hancock Bank and Trust Company, which note was used to discharge an existing obligation of plaintiff's to the Hancock Bank. The Hancock Bank, as a result of receiving this payment, delivered to the defendant stock which Hancock had been holding as collateral for this $80,000 note. This collateral consisted of 5800 shares of stock listed on the American Stock Exchange and 6000 shares of stock listed over the counter, with an aggregate value of $142,075.

2. On November 20, 1969, plaintiff executed and delivered to defendant a note in the amount of $19,300, the proceeds of which were used to purchase 1000 shares of stock in Canadian Javelin

which was traded on the American Stock Exchange. This note recited that it was secured by "stock." Upon completion of this transaction the balance due to defendant from plaintiff, according to a ledger card maintained by defendant for plaintiff's account, was in the amount of $99,300.

3. On May 5, 1969, plaintiff executed a note payable to defendant in the amount of $49,000. The proceeds of this note were used to discharge an existing secured obligation of plaintiff to the National Shawmut Bank of Boston. Upon receipt of this $49,000, the National Shawmut Bank transferred to defendant 1500 shares of stock, some of which was listed on the New York Stock Exchange and the balance on the American Stock Exchange, with a then value of $40,187.50.

4. At the close of business on May 5, 1969, the balance due from plaintiff to defendant, according to defendant's ledger card for plaintiff's account, was $148,300. This liability was secured by stock worth $160,098 on that date.

5. An entry on the ledger card showed that as of June 18, 1969 the balance due from plaintiff to defendant was reduced to $141,092.35. An entry on the card, dated August 31, 1969, showed that the balance due had increased to $191,092.35 and an entry dated January 30, 1970 showed that the balance due from plaintiff to defendant had decreased to $161,378.23.

6. On September 17, 1970, plaintiff executed a new note to defendant in the amount of $170,581.76. This note consolidated all outstanding notes running from plaintiff to defendant as of that date.

7. Any securities held by defendant bank which are traded over the counter and stock in defendant bank are not "margin" stock within the meaning of Regulation U.

8. If defendant is entitled to prevail on its counterclaim it is entitled to receive $116,231.97 and interest thereon.

On the basis of what I find to be the credible evidence, I find and rule as follows:

Plaintiff is a mature and experienced businessman who has been employed by the Anderson-Little Company, a chain of men's clothing stores, since 1946. He graduated from Georgetown University in 1941 where his major field of study was business administration. He is presently a district manager for Anderson-Little and has over-all charge and control of 17 Anderson-Little stores. He first met Sherwood J. Tarlow, President, and Frederick W. Young, Executive Vice-President, of defendant bank, in September of 1968, in connection with the solicitation by the bank of deposits of funds belonging to Anderson Little. Arrangements were completed between the parties for transferring Anderson Little funds to defendant bank at about that time. Approximately one month later (in November 1968), conversations took place between plaintiff and representatives of the bank relative to plaintiff's transferring his personal account to defendant bank which, in fact, plaintiff did, in December 1968. Thereafter, there ensued between the parties the loans as described in the above-quoted stipulation.

It is clear from the record that no Regulation U purpose statement was ever executed in connection with any of the loans made by defendant to plaintiff. It is likewise clear from the record that the decision of which shares to sell and which shares to buy was at all times made by plaintiff himself or plaintiff in consultation with his brokers. There is no credible evidence that any decision relative to buying, retaining or selling stock in any particular corporation was ever made by any representative of the defendant with reference to the portfolio which secured the loans in issue herein.

█ I find that plaintiff's contention that he never saw any money or any share certificates in connection with these loans is true, but I rule it is with-

out legal significance in view of the fact that the funds were sent at his direction to pay for purchases or sales which were decided upon and ordered by him, not by representatives of defendant. I rule that there is no legal significance in the fact that the proceeds of the loans went to nominees of the plaintiff rather than to plaintiff personally, nor is there any legal significance in the fact that shares were held by the defendant bank as security for these loans rather than held by the plaintiff personally.

An analysis of the evidence herein indicates that three of the four loans in issue were non-purpose loans, i. e., the loan of December 23, 1968 in the amount of $80,000 which was made specifically to discharge the note running from plaintiff to the Hancock Bank, the loan made by plaintiff on May 5, 1969 in the amount of $49,000 which was made to discharge the existing $49,000 obligation of plaintiff to the National Shawmut Bank, and the loan made for the purpose of purchasing stock of the defendant bank.

■ The reason that the first two of these three loans are not "purpose" loans within Regulation U is that they were executed to discharge existing loans running, respectively, to the Hancock Bank and the National Shawmut Bank, neither of which, concededly, were purpose loans. It is settled law that a loan made to discharge a non-purpose loan is itself a non-purpose loan.

12 C.F.R. § 221.101 provides:

"a. Under this part the original purpose of a loan is controlling. In other words, if a loan originally is not for the purpose of purchasing or carrying registered stocks, changes in the collateral for the loan do not change its exempted character.

"b. However, a so-called increase in the loan is necessarily on an entirely different basis. So far as the purpose of the credit is concerned, it is a new loan, and the question of whether or not it is subject to this part must be determined accordingly. . . . "

■ It is clear from the testimony of plaintiff himself that the proceeds of the Hancock Bank loan were not used to purchase or acquire securities. Plaintiff also testified that the proceeds of the National Shawmut Bank loan "were not used to purchase stock." (Tr., pp. 57–59.) Accordingly, since the original purpose of these two loans was not to purchase stock, and since the record indicates that the defendant at no time increased the amount of the loans so as to make them new loans under the above-quoted regulation, those loans remain, as they originally were, non-purpose loans. Defendant contends that this ruling is also supported by 12 C.F.R. 221.3(e), since the conduct of defendant in issuing credit to plaintiff to extinguish the Hancock and Shawmut Bank loans may fairly be characterized as either a renewal of credit or as an extension of maturity date of credit within the terms of § 221.3(e), which provides:

"(e) Renewals and extensions of maturity. The renewal or extension of maturity of a credit need not be treated as the extension of a credit if the amount of the credit is not increased except by the addition of interest or service charges in respect to the credit or of taxes on transactions in connection with the credit."

■ I rule that the third loan, i. e., the loan for the purpose of purchasing stock in defendant bank, is not a purpose loan because of the stipulation of the parties that stock in defendant's bank is not "margin" stock within the terms of Regulation U.

I find that there is no merit in plaintiff's contention that there was at least a technical violation of Regulation U since, facially at least, 12 C.F.R. 221.-3(a) appears to require a purpose statement in connection with any loan made by a bank and secured by stock, whether or not the purpose of the loan was to obtain or carry margin stock. I rule that the function of § 221.3(a) is primarily evidentiary to afford a document to protect banks from belated claims of inves-

tors that certain loan transactions were in fact made for the purpose of carrying margin stocks. 12 C.F.R. 221.106, providing good faith reliance by a bank on a borrower's Regulation U statement is an absolute defense to a private action, appears to mandate this conclusion.

█ Finally, I rule that Regulation U is concerned only with "purpose credit" and is not concerned with "non-purpose credit." Thus, even if there has been a technical failure to comply with Section 221.3(a) that is an inadequate basis for visiting civil liability on defendant bank. Cf. Tartell v. Chelsea National Bank, 351 F.Supp. 1071, 1076–1077 (S.D.N.Y. 1972), aff'd. 470 F.2d 994.

█ The remaining loan to be dealt with is the loan made on February 20, 1969, which I find was made for the specific purpose of purchasing 1000 shares of stock in Canadian Javelin which I find is a "margin" stock because it is traded on the American Stock Exchange. I rule that this loan is a "purpose" loan within the provisions of Regulation U. It is clear, on the instant record, that no statement of purpose was executed in connection with this loan. Defendant seeks to avoid liability with regard to this loan with the contention that the total value ($137,384) of all stock held by it as security for loans made to plaintiff, both purpose and non-purpose, is large enough to permit an allocation by defendant of $100,000 thereof as security for the Canadian Javelin loan, and an allocation of the remainder of the stock as security for the non-purpose loans.

The fatal flaw in this argument is that while, concededly, this *could* have been done, I find that *in fact* it was not done. Accordingly, I find that the loan of $19,300 violated the provisions of Regulation U and I rule that plaintiff's filing of this lawsuit is an election on his part to rescind this transaction. Because, as indicated above, plaintiff is not entitled to prevail as to the other notes in issue between the parties, his right to rescind the $19,300 note may be availed

of by him only as a defense in diminution of his liability to defendant on those other notes, i. e., plaintiff may not recover damages on his complaint. In view of the stipulation of the parties that the current indebtedness from plaintiff to defendant on all of these transactions (assuming them to be valid) is in the amount of $116,231.97, I find that defendant bank is entitled to recover on its counterclaim the sum of $96,931.97.

Judgment accordingly.