**Belle TEITELBAUM, Individually and as Executrix under the Will of Joseph Teitelbaum, Deceased, Plaintiff,**

**v.**

**SCRANTON NATIONAL BANK, Defendant.**

**Civ. No. 73–230.**

United States District Court, M. D. Pennsylvania.

Nov. 7, 1974.

Joseph J. Musto, Wilkes-Barre, Pa., for plaintiff.

Paul D. Horger, Oliver, Price & Rhodes, Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

HERMAN, District Judge.

Now before the court is a motion for summary judgment filed by the defendant. Plaintiff filed a brief in opposition to defendant's motion and defendant filed a reply brief thereto. The motion was argued before this court on September 19, 1974.

The history of this case may be briefly stated. Between January 1962 and March 1970, a series of loans was made by defendant to Joseph Teitelbaum and Belle Teitelbaum, his wife.

The collateral for most of the loans consisted of securities allegedly purchased with the loan proceeds by Mr. Teitelbaum. On April 9, 1969, all existing loans were consolidated into one loan of $112,500. Plaintiff and her husband signed a demand note for the above amount. Mr. Teitelbaum died on January 10, 1970.

On May 27, 1970, and on several occasions thereafter, defendant sold securities held by it as collateral in order to reduce the amount of the Teitelbaum's loan. This action was precipitated by the decreasing market value of the securities and the desire of the bank to protect itself.

The first count of the complaint alleges that defendant made loans to plaintiff and her husband which it knew were in violation of Section 7 of the Securities Exchange Act of 1934, 15 U.S.C. § 78g, and Regulation U of the Board of Governors of the Federal Reserve, 12 C. F.R. § 221. The second count alleges that defendant violated the Civil Rights Act, 42 U.S.C. § 1983, by selling the securities held by it as collateral without proper notice or a hearing, in violation of plaintiff's right to due process of law.

During the oral argument of this motion, counsel for the plaintiff agreed to summary judgment on all but four of the loan transactions.[1]

Defendant has advanced four separate grounds supporting its motion for summary judgment. Plaintiff's concession regarding partial summary judgment makes moot the statute of limitations issue and reduces the number of issues before this court to three.

Defendant's first contention is that a private cause of action in favor of borrowers does not exist under § 7 of the Securities Exchange Act of 1934, 15 U. S.C. § 78g. In order to clarify the discussion which follows, it is necessary to analyze in some detail the provisions of § 7 which are relevant to this case.

Section 7 establishes margin requirements which regulate the amount of credit that may be maintained on certain specified securities.[2] Section 7(c), 15 U.S.C. § 78g(c) is directed at stockbrokers. Section 7(d), 15 U.S.C. § 78g(d) is directed at all other persons, including banks who extend credit. Section 7(a), 15 U.S.C. 78g(a) authorizes

---

1. The loans which remain at issue are as follows:
   1) October 30, 1968—$15,000
   2) December 18, 1968—$8,000
   3) April 9, 1969—$5,000
   4) May 1, 1969—$15,000

2. The main purpose of § 7 is "to give a government credit agency an effective method of reducing the aggregate amount of the nation's credit resources which can be directed by speculation into the stock market . . . ." Report of the House Committee, H.R.Rep.No.1383, 73d Cong., 2d Sess. 8 (1934).

the Board of Governors of the Federal Reserve System to prescribe rules and regulations governing extensions of credit for the purchase or carrying of securities. Pursuant to this grant of authority, the Board of Governors promulgated Regulations T and U.[3] The former constitutes an implementation of Section 7(c); the latter of Section 7(d).

Several courts have found an implied cause of action under § 7(c) and Regulation T. Landry v. Hemphill, Noyes & Co., 473 F.2d 365, 370 (1st Cir. 1973); Pearlstein v. Scudder & German, 429 F. 2d 1136, 1140 (2d Cir. 1970); Goldenberg v. Bache & Co., 270 F.2d 675, 680 (5th Cir. 1959); Livingston v. Weis, Voisin, Cannon, Inc., 294 F.Supp. 676, 681 (D.N.J.1968); Remar v. Clayton Securities Corp., 81 F.Supp. 1014, 1017 (D.Mass.1949). An implied cause of action has also been held to lie for violations of § 7(d) and Regulation U. Goldman v. Bank of Commonwealth, 467 F.2d 439, 445 (6th Cir. 1972); Grove v. First National Bank of Herminie, 352 F.Supp. 1250 (W.D.Pa.1972), aff'd, 489 F.2d 512 (3d Cir. 1974); Serzysko v. Chase Manhattan Bank, 290 F.Supp. 74, 78 (S. D.N.Y.1968); Remar v. Clayton Securities Corp., *supra*.

The Third Circuit Court of Appeals has explicitly reserved judgment on the questions of whether there is an implied cause of action either under § 7(c) and Regulation T, Jennings v. Boenning & Co., 482 F.2d 1128, 1130–1131 (3d Cir. 1973), or under § 7(d) and Regulation U, Grove v. First National Bank of Herminie, 489 F.2d 512, 514–515 (3d Cir. 1973).[4]

The sole authority cited by defendant for the proposition that a private cause of action should not be implied in the case at bar is Judge Friendly's dissenting opinion in Pearlstein v. Scudder & German, *supra*. The Pearlstein case involved an investor suing his stockbroker for violation of the margin requirements of Section 7(c) and Regulation T, 12 C. F.R. § 220.4(c)(2), promulgated thereunder. The majority decision held that the investor had an implied cause of action against the stockbroker and that the defense of *in pari delicto* "does not appear desirable in the securities area here involved." (429 F.2d at 1141) In his dissent, Judge Friendly recognized that "violations of [§ 7(c) and Regulation T] may give rise to civil liability in appropriate cases . . . . But this is not an appropriate case." *Id.*, at 1147. He further stated that "to be sure, it may be proper in some instances to impose civil liability in furtherance of the subsidiary purpose of § 7(c), protection of the innocent 'lamb' attracted to speculation by the possibility of large profits with low capital investment." *Id.*, at 1148.

It is apparent from the above-quoted language that Judge Friendly's dissent is based on the majority's willingness to impose liability on brokers even where the investor knows of the margin requirements of § 7(c) and Regulation T, and *not* with the general proposition that civil liability may be implied under § 7(c). Moreover, the court notes that the Pearlstein case involved an investor suing a stockbroker; whereas, in the case at bar, a borrower is suing a lending bank.

■ I hold that civil liability may be imposed for violation of § 7(d) and Regulation U. The question whether this cause of action is unencumbered by an *in pari delicto* defense, as suggested by the majority in Pearlstein, is not before me on this motion for summary judgment. Accordingly, I take no position on that question at this time.

---

3. Regulation U, 12 C.F.R. 221, provides in essence that no bank shall extend any credit secured by any stock for the purpose of purchasing regulated stock in an amount exceeding the prescribed loan value of the stock.

4. The district court in Grove v. First National Bank of Herminie, 352 F.Supp. 1250 (W.D.Pa.1972), held that there is an implied cause of action for violation of Regulation U. On appeal, the defendant conceded that issue. 489 F.2d at 514.

The second issue raised by defendant is whether the loans in question[5] were violative of Regulation U. Defendant asks this court to rule as a matter of law that under the circumstances of this case defendant did not violate § 221.3(a) of Regulation U. The court is not prepared to so hold.

█ Section 221.3(a) of Regulation U[6] (12 C.F.R. 221 (1968)) requires a bank to obtain a statement (called a Regulation U statement) from its borrower which indicates the purpose for which the loan proceeds are to be used. In determining whether the loan is for a permissible purpose, the bank may rely on the statement if it is accepted in good faith. The regulation provides that in order to accept the borrower's statement in good faith, the bank officer ". . . must (1) be alert to the circumstances surrounding the credit, and (2) if he has any information which would cause a prudent man not to accept the statement without inquiry, have investigated and be satisfied that the customer's statement is truthful." A review of the documentation attached to defendant's motion indicates that there is a very real question relating to the good faith acceptance by the bank of the Regulation U statements submitted by the Teitelbaums. There being a genuine issue of material fact, summary judgment may not be granted. Rule 56(c), Fed. R.Civ.P.

The final issue raised is whether plaintiff was entitled to notice and hearing before the defendant sold the securities held by it as collateral. As mentioned previously in this memorandum, plaintiff alleged in her complaint that defendant's acts in selling the securities constituted a violation of the Civil Rights Act, 42 U.S.C. § 1983, in that, defendant, under color of state law, deprived plaintiff of her constitutional rights under the due process clause of the 14th Amendment to the United States Constitution.

Plaintiff contends that summary sale of collateral is only permitted because Pennsylvania has enacted §§ 9–503 and 9–504 of the Uniform Commercial Code, 12A P.S. §§ 9–503, 9–504.[7] Defendant contends that the sale of the collateral was purely a private action pursuant to the terms of a demand note executed by plaintiff.[8] The terms of the note authorize the bank to sell securities held as collateral when, as in this case, the borrower fails to comply with the bank's demand for additional collateral security.

█ Plaintiff relies on the case of Gibbs v. Titelman, 369 F.Supp. 38 (E. D.Pa.1973) for the proposition that self-help repossession permitted by state statute constitutes "state action."[9] That proposition was expressly rejected by the Third Circuit Court of Appeals when it reversed the above-cited case. Gibbs v. Titelman, 502 F.2d 1107 (3d Cir. 1974). The Circuit Court noted its agreement with the Ninth, Eighth, Fifth and Second Circuits that ". . . private repossessions are not infused with 'state action' merely because the state enacted sections 9–503 and 9–504 of the UCC . . . ." Id. at 1113. It fol-

---

5. Defendant conceded that if the court found an implied cause of action, liability on the May 1, 1969 loan of $15,000 would be admitted. Defendant's brief, p. 28. According, only three loans remain at issue. See, n. 1, supra.

6. Regulation U was first issued in 1959 (12 C.F.R. § 221). References to Regulation U in this memorandum are to the regulation as amended, effective March 11, 1968.

7. Section 9–503 deals with a secured party's right to take possession after default. Section 9–504 authorizes a secured party to sell collateral after default.

8. Defendant's brief in support of motion for summary judgment, p. 34, and Exhibit 31–A attached thereto.

9. In the context of this memorandum, "state action" and "color of state law" are used interchangeably. Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 n. 7, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Gibbs v. Titelman, 502 F.2d 1107 (3d Cir. 1974); Jackson v. Metropolitan Edison Co., 483 F.2d 754 (3d Cir. 1973), cert. granted, 415 U.S. 912, 94 S.Ct. 1407, 39 L.Ed.2d 466.

lows that if private repossessions and sales are not "state action" merely because Pennsylvania enacted §§ 9–503 and 9–504 of the Uniform Commercial Code, then the selling by a creditor of collateral already in its possession cannot be considered "state action." Since private action, however wrongful, cannot form a basis for relief under 42 U.S.C. § 1983; Brownley v. Gettysburg College, 338 F.Supp. 725, 726 (M.D.Pa.1972), summary judgment in the defendant's favor on plaintiff's claim under 42 U.S.C. § 1983 must be granted.

To summarize, partial summary judgment in the defendant's favor will be granted as to all transactions in the first count of the complaint, except the following:

1) the loan of $15,000 on October 30, 1968;

2) the loan of $8,000 on December 18, 1968;

3) the loan of $5,000 on April 9, 1969;

4) the loan of $15,000 on May 1, 1969.

Summary judgment will be granted in the defendant's favor on the second count of the complaint.

An appropriate order will be entered.