William W. McNEAL

v.

PAINE, WEBBER, JACKSON & CURTIS, INC.

Civ. A. No. C76–1442A.

United States District Court, N. D. Georgia, Atlanta Division.

March 22, 1977.

---

Edward L. Savell, of Savell, Williams, Cox & Angel, Atlanta, Ga., for plaintiff.

Gary W. Hatch and Dom H. Wyant, of Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

This action, based upon the Securities Exchange Act of 1934, is currently before

the court on defendant's motion for judgment on the pleadings and its motion to dismiss for failure to state a claim on which relief can be granted.

During the years 1971–1973, plaintiff maintained an account with the defendant for the purpose of investing funds in securities. The complaint alleges that during this period the employee of defendant who handled plaintiff's account (1) fraudulently induced the plaintiff to purchase certain securities, (2) transferred funds from one account to another to give the illusion that plaintiff's margin account was within the legal limits, and (3) continuously churned plaintiff's holdings for the purpose of generating commissions for himself. The complaint further alleges that as a result of such activities, plaintiff's original investment of $179,000 diminished to $19,000 by September 1973. The plaintiff bases his cause of action on Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10(b)(5), 17 C.F.R. § 250.10(b)–5 promulgated thereunder, and on Section 7, 15 U.S.C. § 78g, of that Act and Regulation T, 12 C.F.R. § 220. Although the plaintiff does not specify which acts of defendant's employee violated which respective statute and regulation, it is apparent that § 7, which limits the amount of credit that may be extended for the purchase of securities, could only relate to defendant's alleged failure to insure that plaintiff's accounts met the margin requirements of Regulation T. Thus, plaintiff's fraud and churning claim must be based on § 10(b) and Rule 10(b)–5. The defendant seeks dismissal of the action on the grounds that (1) § 7 cannot serve as a basis for a private cause of action, (2) the action is barred by the applicable statute of limitations, and (3) the complaint fails to set out the allegations of fraud with sufficient particularity.

## The Section 10(b) Claim

■ The defendant argues that the § 10(b) claim is time barred inasmuch as the complaint asserts that the fraud was discovered on September 4, 1973, and the action was not instituted until September 3, 1976.

Section 10(b) and Rule 10(b)–5 make no provision for a statute of limitations in civil actions, so this court is bound to look to the limitation period which "the forum state applies to the state remedy which bears the closest substantive resemblance to rule 10(b)–5 and which best effectuates its purpose," Sargent v. Genesco, Inc., 492 F.2d 750 (5th Cir. 1974). In Putney v. Hamilton Industries, Inc., No. C74–1874A (Sept. 30, 1976) (Edenfield, J.), this court agreed with Judge O'Kelley's conclusion in Mooney v. Tallant, 397 F.Supp. 680 (N.D.Ga.1974), that Ga.Code Ann. § 97–112, Georgia's securities fraud statute, was the state provision which most closely resembled Rule 10(b)–5 and which best effectuated its purpose. The statute of limitations applicable to that section is two years, Ga.Code Ann. § 97–114(a).

■ In concluding that it should look to § 97–112, rather than to Georgia's general fraud statute, § 105–302, the court made three observations: (1) the language of the former section tracked closely with that of the rule, (2) neither the statute nor the rule seemed to require proof of scienter, and (3) the two-year limitation of § 97–112 more closely approximated the time limitations provided in other sections of the federal securities law than the four-year limitation applicable to § 105–302. In relying on these three tests, this court followed the standards set out in Hudak v. Economic Research Analysts, Inc., 499 F.2d 996 (5th Cir. 1974), cert. den. 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975), and Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (7th Cir. 1972).

The plaintiff argues, however, that this court should reconsider its holding in Putney since (1) the Supreme Court has since held that proof of scienter is required in actions under Rule 10(b)–5, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), (2) this action is not one for rescission, as provided for under § 97–112, but is instead one for damages, and (3) this action includes a claim for violation of § 7 in addition to the § 10(b) claim.

The plaintiff's third reason relating to § 7 will be discussed below; the court finds the two other reasons to be unpersuasive. Although a Rule 10(b)–5 action now requires scienter, whereas an action under § 97–112 may not (a question still not addressed by the Georgia courts), § 97–112 still bears the closest resemblance to Rule 10(b)–5 and shares a commonality of purpose with that rule. These factors clearly outweigh any possible difference in the scienter requirements of the two provisions, see *Forrestal Village, Inc. v. Graham*, 551 F.2d 411, ¶ 95,-833 CCH Fed.Sec.L.Rep. (D.C.Cir. 1977), *Bailey v. Piper, Jaffray & Hopwood, Inc.*, 414 F.Supp. 475 (D.Minn.1976).

■ The plaintiff's argument that § 97–112 should not be applied in this case because of the disparity in remedies has surface appeal. He argues that § 97–112 only allows for·rescission of the sale of securities and the return of their purchase price, while in this case, the plaintiff seeks recovery of damages resulting from defendant's alleged mismanagement of his account. The argument must be rejected, however, since its acceptance would defeat any effort to insure a uniform statute of limitations for securities actions in Georgia. As this court noted in *Putney*, it would be tempting for many litigants to fashion the nature of their remedy to avoid the two-year limitation period. The courts of this state would then be required to make esoteric distinctions between a claim for damages and one for rescission before it could be determined whether or not the action was time-barred. In any event, the relief that plaintiff seeks here is not all that dissimilar to rescission since he merely wishes to be restored to the status quo ante.

■ The court therefore concludes that the two-year statute of limitations set out in § 97–114(a) applies to plaintiff's § 10(b) claim and GRANTS defendant's motion to dismiss the claim as time-barred.

### The Section 7 Claim

The plaintiff alleges that the defendant's agent violated § 7 of the Securities Exchange Act of 1934, 15 U.S.C. § 78g, and Regulation T, 12 C.F.R. § 220, promulgated thereunder, by allowing certain of plaintiff's accounts with defendant to violate the margin requirements of that regulation. The complaint does not delineate the alleged violations or specify which sections of Regulation T were violated, but the plaintiff does charge that defendant's agent continuously failed to inform the plaintiff that his accounts did not contain sufficient cash to comply with the margin requirements, and that he affirmatively deceived the plaintiff by informing him that he could ignore the margin calls from the defendant's offices because they were issued in error. The plaintiff also asserts, in his brief in opposition to defendant's motion, that he was directly injured by such practices in that the defendant was eventually forced to sell certain of plaintiff's securities in order to comply with the margin requirements and that such a sale resulted in a loss to plaintiff.

■ The defendant seeks to dismiss the § 7 claim, asserting that the section does not provide a basis for a private cause of action. Numerous courts have held, however, that Section 7 and the regulations promulgated thereunder, including Regulations T and U,[1] may be the basis for a private civil action for damages or for rescission of a contract in violation of the regulations, *McCormick v. Esposito*, 500 F.2d 620 (5th Cir. 1974), *cert. den.* 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 842 (1975), *Landry v. Hemphill, Noyes & Co.*, 473 F.2d 365 (1st Cir. 1973), *cert. den.* 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973), *reh. den.* 415 U.S. 960, 94 S.Ct. 1492, 39 L.Ed.2d 576 (1974), *Naftalin & Co. v. Merrill Lynch*, 469 F.2d 1166 (8th Cir. 1972), *Goldman v. Bank of Commonwealth*, 467 F.2d 439 (6th Cir. 1972), *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970), *cert. den.* 401 U.S.

1. Section 221 of 12 C.F.R. limits the amount of credit a bank may extend to a borrower for the purpose of purchasing securities.

1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971), *Goldenberg v. Bache & Co.*, 270 F.2d 675 (5th Cir. 1959), *Neill v. David A. Noyes & Co.*, 416 F.Supp. 78 (N.D.Ill.1976), *Jennings v. Boenning & Co.*, 388 F.Supp. 1294 (E.D. Pa.1975), aff'd. 523 F.2d 889 (3d Cir. 1975). These courts have recognized that a private cause of action furthers the primary purpose of Section 7, which is "to prevent speculation on credit from draining a disproportionate share of the nation's credit resources into the stock market," *Naftalin, supra* at 1180. Some of them have also found that "A subsidiary purpose of § 7(c) [which makes it illegal to violate the rules and regulations promulgated pursuant to § 7] . . . is to protect the small investor from the dangers of excessive trading on credit" and that Regulation T furthers that purpose by "preventing the investor from engaging in speculative securities transactions which he could not, or would not, enter if the margin requirements were not complied with," *Landry, supra* at 370. Thus, the primary basis for § 7 civil actions is the implied remedy doctrine set out in *J. I. Case Co. v. Borak*, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), in which the Court held that private actions may be a "necessary supplement to Commission action" in the enforcement of § 14(a) of the Securities Exchange Act.[2]

The defendant argues, however, that recent decisions in the Second Circuit have cast doubt upon the continued viability of private actions by investors under § 7. A review of these decisions must begin with *Pearlstein, supra* (*Pearlstein I*), in which the Second Circuit held that an investor could recover damages against his broker for failing to liquidate the purchase of certain stocks when the investor had not paid over the cash balance due on the stocks as required by 12 C.F.R. § 220.4(c)(2) of Regulation T. The fact that the investor knew of

the violation, and in fact may have induced the broker to enter into the illegal transaction was deemed irrelevant since the court found that "Congress has placed the responsibility for observing margins on the broker," 429 F.2d 1136, 1141. Judge Friendly vigorously dissented, arguing that the primary purpose of Section 7 was not to protect the individual investor and that, in any event, the effect of the majority's decision would only be to allow investors to place the risk of their losses on their brokers because of technical violation of Regulation T. *Id.* at 1147–8.

Subsequent to *Pearlstein I*, § 7 was amended by the addition of § 7(f) which made it unlawful for any person to *obtain* credit in violation of the section and regulations. Pub.L. 91–508, 84 Stat. 1124 (Oct. 26, 1970). In 1971, Regulation X, 12 C.F.R. § 224, was promulgated to regulate those who borrowed on credit for the purchase of securities. The passage of § 7(f) and Regulation X prompted former District Judge Tyler to question the continued viability of the *Pearlstein I* doctrine in *Bell v. J. D. Winer & Co.*, 392 F.Supp. 646 (S.D.N.Y. 1975). He noted that although § 7(f) was not explicitly passed for the purpose of eliminating an investor's private cause of action, it at least undermined the basis of such an action by imposing responsibility for compliance with margin requirements on investors. He concluded that "while § 7(f) was probably not specifically intended to restore the *in pari delicto* defense which *Pearlstein* undermined, it must be interpreted as having had that effect to some extent," 392 F.Supp. at 654. When *Pearlstein* was again before the Second Circuit for a review of the damages awarded by the district court, the Court of Appeals noted that *Pearlstein I* was the law of the case, but that the effect of § 7(f) was to cast "doubt on the continued viability of the

---

2. An additional basis is Section 29(b) of the Act, 15 U.S.C. § 78cc(b), which provides that any contract which violates the Act or regulations is void. This section has been relied on in borrowers' actions to void a loan by a bank in contravention of Regulation U and in defense of the bank's claim to enforce the loan, *see*

*Serzysko v. Chase Manhattan Bank*, 290 F.Supp. 74, 90 (S.D.N.Y.1968), aff'd mem. 409 F.2d 1360 (2d Cir.), *cert. den.* 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969), *Stonehill v. Security Natl. Bank*, 68 F.R.D. 24 (S.D.N.Y. 1975).

rationale of our prior holding," *Pearlstein v. Scudder & German*, 527 F.2d 1141, 1145, n. 3 (2d Cir. 1975). Finally, another district court has noted that the existence of § 7(f) and Regulation X "would appear [to make it] impossible" for a borrower to prevail in an action to rescind a loan in violation of Regulation U, *Freeman v. Marine Midland Bank*, 419 F.Supp. 440, 452 (E.D.N.Y.1976).

 This court agrees with Judge Tyler's conclusion that the addition of § 7(f) places in doubt the right of a knowing investor to recover for the margin violations of his broker. In fact, even without the addition of § 7(f), some courts have questioned the propriety of allowing an investor to recover damages because of a violation of Regulation T or U where the investor knew that his account was in violation of the regulation, *see, e. g., Naftalin, supra, Goldman, supra, Teitelbaum v. Scranton Natl. Bank*, 384 F.Supp. 1139 (M.D.Pa.1974), *see also McCormick v. Esposito*, 500 F.2d 620, 627–8 (5th Cir. 1974), *Gordon v. du Pont Glore Forgan, Inc.*, 487 F.2d 1260 (5th Cir. 1973), *cert. den.* 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 666 (1974). The situation is quite different, however, where an investor is affirmatively misled by his broker into believing that his account is in compliance with Regulation T, and, as a result, suffers tangible losses when his broker sells certain stocks at an unfavorable price in order to comply belatedly with that regulation. By allowing recovery in such a situation, this court would be furthering the dual purposes of § 7 without bestowing upon the investor the unjust enrichment

alluded to in Judge Friendly's *Pearlstein I* dissent.[3]

██ If plaintiff's allegations are true, much of his losses are the direct result of defendant's misinformation as to the margin status of his accounts. If plaintiff had been properly informed, either the stock purchase would have been liquidated within days after the purchase, or the account would have been properly margined by an additional payment by plaintiff. Losses could then have been minimized by either the quick sale, or a decision by the plaintiff to hold on to the stocks until they commanded a more favorable price. An award of damages would thus place the plaintiff in the position he would be in but for defendant's misdeeds and would act as an incentive to defendant to follow the requirements of Regulation T more closely in the future.

The court therefore concludes that plaintiff's complaint states a cause of action for damages under § 7 of the Securities Exchange Act of 1934.

*The Applicable Statute of Limitations for the Section 7 Claim*

██ The defendant has moved to dismiss plaintiff's § 7 claim on the additional ground that it was brought after the two-year limitation period set out in Ga.Code Ann. § 97–114. The plaintiff has argued that § 97–114 is inapplicable to actions based on § 7. Section 7, of course, does not provide its own limitation period since the civil remedy is judicially created;[4] thus, this

3. In allowing recovery under § 7 and Regulation T only when the investor is affirmatively misled by his broker, this court does not hold that the § 7 cause of action should be limited to only those situations where the broker is guilty of fraud under § 10(b) and Rule 10(b)–5, as has been implied in *Utah State University v. Bear, Stearns & Co.*, 549 F.2d 164, 169 (10th Cir. 1977). The heart of a § 7 claim is the broker's failure to conform an investor's account with Regulation T, not the broker's failure to properly inform the investor. The broker's misinformation is relevant only to the extent that it demonstrates that the investor himself could not reasonably have known that the account was not in compliance. Thus, the scienter re-

quirement of § 10(b) and Rule 10(b)–5 would not be relevant to a § 7 cause of action.

4. In *Goldenberg v. Bache & Co.*, 270 F.2d 675 (5th Cir. 1959), the Fifth Circuit applied the limitation period provided in § 29(b), 15 U.S.C. § 78cc(b), in an action alleging violation of both § 7 and § 15, 15 U.S.C. § 78o. That application, however, was clearly erroneous in that the limitation period of § 29(b) is limited by its own terms to actions under § 15. For this reason, other courts have declined to follow the *Goldenberg* reference to § 29(b), *see Jennings v. Boenning & Co.*, 388 F.Supp. 1294 (E.D.Pa. 1975), *Livingston v. Weiss, Voisin, Cannon, Inc.*, 294 F.Supp. 676 (D.N.J.1968).

court must look to the limitation period which Georgia applies to the state remedy bearing the closest resemblance to § 7, *Sargent v. Genesco, supra.* Unlike Rule 10(b)–5, however, § 7 has no closely analogous counterpart in state law. The court must therefore search for the state remedy which, though not similar in form and scope, nonetheless best effectuates the purposes underlying § 7.

A review of the holdings of other courts faced with the same problem provides little guidance. In such cases, the courts have either adopted one statute over another with little discussion, or have found it unnecessary to reach any decision at all, *see, e. g., Hupp v. Gray,* 500 F.2d 993 (7th Cir. 1974), *Klein v. Bower,* 421 F.2d 338 (2d Cir. 1970), *Jennings, supra.* In *Hornblower & Weeks-Hemphill, Noyes v. Burchfield,* 366 F.Supp. 1364 (S.D.N.Y.1973), the court opted for the application of a New York statute, CPLR § 214(2), which sets the limitation period at three years for actions to recover on liabilities created or imposed by statute. The court chose to apply this section since an action based on § 7 was obviously not known at common law, and was therefore based on a liability created by statute within the meaning of § 214(2). The court rejected the six-year fraud period as being applicable only to § 10(b) claims, and found the six-year contract period inapplicable because a violation of a margin requirement is "a *malum prohibitum,* not a breach of agreement," 366 F.Supp. at 1367.

Georgia law contains a statutory provision analogous to that relied on by the *Hornblower* court which provides a twenty-year limitation period for "all suits for the enforcement of rights accruing to individuals under statutes", Ga.Code Ann. § 3–704. This court declines to apply the twenty-year period, however, since (1) such a long period bears no resemblance to the relatively short periods specifically provided for in other sections of the Securities Exchange Act, and (2) application of this period would not be in strict compliance with *Hudak* and *Sargent, supra,* which require this court to apply the limitation period of the state *rem-*

*edy* which most closely embodies the purposes underlying § 7. Section 3–704 merely provides an omnibus time provision for all statutorily-created remedies which do not themselves specify an applicable limitation period.

Nor does the court believe that it should apply either the four-year limitation period for actions on implied contracts, Ga. Code Ann. § 3–706, or for actions for injuries to personalty, § 3–1002. There is some plausibility to either the theory that a violation of § 7 is a breach of a broker's implied contract with his client to comply with applicable regulations, or the reasoning of the *Hornblower* court that an action for such a violation basically sounds in tort. Yet, the court must conclude that § 97–112 best effectuates the purposes of § 7, and therefore chooses to apply the two-year limitation period set out in § 97–114.

It is true that the current action, stripped of its § 10(b) claim, is no longer an action for fraud; the gravamen of the alleged § 7 offense is the failure of defendant's agent to insure that plaintiff's accounts complied with the requirements of Regulation T, *see* note 3, *supra.* But it now seems clear that a § 7 claim should be allowed to stand only when the broker is guilty of either misleading his client, or at least failing to apprise him of the fact that his account is not in compliance with the regulation. Thus, a § 7 violation must include some of the qualities of a "device, scheme, or artifice to defraud," § 97–112(d)(2), in order to provide the basis for a private civil action. It is apparent therefore that § 7 bears a closer similarity in purpose to § 97–112, than to common law tort or contract theories of recovery. The court particularly notes in this regard that § 10(b), the federal analogue to § 97–112, has become the primary vehicle for challenging wilful tortious injury to others operating in the securities field. While § 97–112 may not have the same degree of versatility as § 10(b), it nonetheless sets the standard for proper disclosure in the field. Common law theories of contract and tort, on the other hand, because they speak to so

many forms of injury, cannot relate to securities actions with as sufficient specificity. Application of § 97–112's two-year limitation period to § 7 actions, moreover, would further the interests of preserving a uniform limitation period for security-related violations in Georgia and insuring a relatively short period which closely approximates the periods explicitly established by Congress.

 Inasmuch as this action was clearly brought more than two years after the alleged violations occurred, the defendant's motion to dismiss the § 7 claim as time-barred is hereby GRANTED.

In summary, both plaintiff's § 10(b) and § 7 claims are DISMISSED; the clerk is DIRECTED to enter final judgment in favor of the defendant.