Myles OSTERNECK, Guy-Kenneth Osterneck, Robert Osterneck, Myles Osterneck and Guy-Kenneth Osterneck as Trustees for the Benefit of Robert Osterneck, Plaintiffs,

v.

E. T. BARWICK INDUSTRIES INC., E. T. Barwick, M. E. Kellar, Kenneth L. Hewitt, B. A. Talley, Fred L. Williamson, Henry S. Woodbridge, Ernst & Ernst, I. T. Cohen and Smith, Cohen, Ringel, Kohler, Martin & Lowe, Defendants.

Civ. A. No. C75–1728A.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 10, 1978.

48

Julian W. Friedman, Charles A. Stillman, New York City, Alford Wall, Wall & Fuller, Roswell, Ga., for plaintiffs.

Richard M. Kirby, Hugh M. Dorsey, Jr., Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for Ernst & Ernst.

Ben L. Weinberg, Jr., Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for I. T. Cohen and Smith, Cohen, Ringel, Kohler, Martin & Lowe.

James E. Tolan, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for E. T. Barwick Ind. Inc., Fred Williamson and Kenneth L. Hewitt.

Earl B. May, Jr., Jones, Byrd & Howell, Atlanta, Ga., for E. T. Barwick.

Foy R. Devine, Fierer & Devine, Atlanta, Ga., for B. A. Talley.

Orinda D. Evans, Alston, Miller & Gaines, Atlanta, Ga., for M. E. Kellar.

## ORDER

HAROLD L. MURPHY, District Judge.

This action arises from the merger of Cavalier Bag Company, Inc. ("Cavalier"), a corporation owned by plaintiffs and their parents, into a subsidiary of The Barwick Corporation ("Barwick") on September 8, 1969. Pursuant to that merger, the plaintiffs exchanged their stock in Cavalier for Barwick stock. This exchange, according to the plaintiffs, was prompted by false and misleading statements contained in Barwick's audited financial statements for the years ending on April 30, 1968 and April 30, 1969. The plaintiffs filed this suit on September 4, 1975, alleging violations of the federal securities law. Presently this action includes claims under §§ 10(b) and 20 of the Securities Act of 1934 (15 U.S.C. §§ 78j(b), 78t), Rule 10b–5 thereunder (17 C.F.R. § 240.10b–5) and the common law of Georgia. Jurisdiction is invoked pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and the principles of pendent and ancillary jurisdiction.

Prior to September 8, 1969, plaintiffs and their parents were the holders of all of the outstanding stock of Cavalier. Defendant Barwick is a corporation organized and existing under the laws of the State of Georgia. Defendants E. T. Barwick, B. A. Talley and M. E. Kellar were directors and officers of Barwick at times relevant to this action. Defendants K. L. Hewitt, Fred L. Williamson and Henry S. Woodbridge were directors of Barwick at times relevant to this action. (These defendants will be collectively referred to as the "Barwick defendants".) Ernst & Ernst ("E & E") is a partnership engaged in the practice of accounting. Defendant I. T. Cohen ("Cohen") is an attorney admitted to practice in Georgia and a member of defendant law firm Smith, Cohen, Ringel, Kohler, Martin & Lowe ("Smith, Cohen").

The gravamen of this action concerns plaintiffs' inducement to trade their Cavalier stock for Barwick stock based on misrepresentations in Barwick's financial statements for the two years preceding the merger. It is alleged that three important factors were misrepresented in these financial statements. First, that Barwick's inventory was overstated due to double counting. Second, that Barwick's operating losses from its foreign subsidiaries were understated as a result of an indemnity agreement Barwick had with a foreign creditor bank. Finally, that Barwick's receivables were overstated due to the inclusion of certain uncollectible debts. A separate securities fraud claim was pleaded against defendant E. T. Barwick, under § 10(b) and Rule 10b–5 alleging that he made loans and guarantees which enabled others to purchase Barwick stock on the open market, thereby artificially driving up its price. Defendant Cohen and Smith, Cohen are charged with failing to exercise reasonable skill, care and diligence in promptly commencing an action based on the information concerning the financial statements related to them by the plaintiffs. Claims against defendants Cohen and Smith, Cohen are pleaded alternatively to plaintiffs' fraud claims.

In October and November 1975, all defendants filed motions to dismiss the complaint based on the statute of limitations and the principles of pendent jurisdiction. On June 7, 1976, United States District Judge James C. Hill entered an order dismissing certain of plaintiffs' claims. He reserved decision on the dismissal motions based on the federal securities laws presently at issue. The June 7, 1976, order permitted plaintiffs to move for leave to file an amended complaint and permitted defendants to conduct discovery solely on the statute of limitations issue. The plaintiffs have now moved for leave to file an amended complaint and the limited discovery has been completed by the defendants.

In addition to plaintiffs' motion for leave to amend their complaint, the Court is once again faced with motions to dismiss by all defendants. A motion to strike extraneous material has also been filed by certain defendants. Defendant E & E has requested an oral hearing on the pending motions. With the voluminous record now before it, the Court sees no purpose in conducting an

oral hearing at this time. The Court will reconsider this denial at a later date if oral argument becomes necessary.

■ 1. Plaintiff filed a Motion for Leave to File an Amended Complaint on June 28, 1976. The amended complaint is essentially similar to the original complaint with two exceptions. Those claims dismissed by the June 7, 1976, order have been omitted. In their amended complaint, apparently responding to defendants' statute of limitations argument, plaintiffs assert that after the merger defendants fraudulently concealed facts pertinent to the alleged misrepresentations contained in the financial reports. The Court relies on the well known principle that leave to amend is freely given. Rule 15(a), Federal Rules of Civil Procedure; *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The motion is granted.

The Court has considered defendant Kellar's opposition to the amendment. The evidence supports his contention that he left the employment of Barwick prior to the merger. However, his lack of involvement in the alleged fraudulent concealment is not clear. Such contentions are more appropriately considered in a motion to dismiss than one for leave to amend a complaint.

■ 2. Defendants have moved to dismiss the plaintiffs' complaint based on the statute of limitations. In order to reach a determination of this issue, the Court must first determine the length of the applicable limitation period. Neither § 10(b) of the Securities Act of 1934 nor Rule 10b–5 contain an express limitation period. Nor does federal law prescribe any general statute of limitations for civil actions. Therefore, the limitation period which the forum state applies to the state remedy which bears the closest substantive resemblance to Rule 10b–5 and which best effectuates its objectives is to be applied. See e. g., *Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir. 1974); *Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.), *cert. den.* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). It is Rule 10b–5 which provides the civil remedy presently sought here by plaintiffs. Although the Court looks to state law to determine the limitation period, the date when a claim accrues so as to trigger the period is a matter of federal law. See e. g., *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195 (5th Cir.) cert. den. 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1960); *Azalea Meats v. Muscat,* 386 F.2d 5 (5th Cir. 1967).

Until recently, it was conceded that the applicable limitation period for federal security cases was Georgia's two-year bluesky limitation period contained in Ga.Code Ann. § 97–114. *Mooney v. Tallant,* 397 F.Supp. 680 (N.D.Ga.1975). This Court held that the blue-sky type of action resembled Rule 10b–5 more closely than a common law fraud action and would best effectuate the federal policy behind the Rule. *id.* at 683. A factor in this Court's determination was the absence of a *scienter* requirement under both Ga.Code Ann. § 97–114 and Rule 10b–5. The suggested alternative limitation period of four years applied to a common law fraud action which did carry a *scienter* requirement. Ga.Code Ann. § 3–1002 and § 105–302.

The reasoning of *Mooney* was cast into doubt by the Supreme Court's holding in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In that case the Court held that a necessary element of liability under § 10(b) and Rule 10b–5 was that the defendant had acted with *scienter,* defined as "intent to deceive, manipulate, or defraud." *id.* at 193, 96 S.Ct. at 1381. The plaintiffs argue that with the imposition of a *scienter* requirement for § 10(b) and Rule 10b–5, the bluesky limitation period is no longer applicable. Instead plaintiffs contend that this Court should apply the four-year statute of limitation applicable to common law fraud actions. Ga.Code Ann. § 3–1002.

■ Defendants argue that *Hochfelder* does not change the nature of § 10(b) and Rule 10b–5. On the contrary, the purposes and policies underlying those security laws remain the same. Even before the decision in *Hochfelder,* "some culpability beyond mere negligence" was required in Rule

10b–5 litigation. *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996, 1000 (5th Cir. 1974) *cert. den.* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975). Although the defenses available may differ between Ga.Code Ann. § 97–112 and Rule 10b–5, the resemblance test goes beyond looking at that one factor. As this Court stated in *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 429 F.Supp. 359, 363 (N.D.Ga.1977), "§ 97–112 still bears the closest resemblance to Rule 10(b)–5 and shares a commonality of purpose with that rule. These factors clearly outweigh any possible difference in the scienter requirements of the two provisions." The two-year statute of limitations of Georgia's blue-sky provision is applicable to the case at bar.

Even if the two-year statute of limitations is presently applicable, the plaintiffs argue that it should not be applied retroactively to the facts of this case. In support, the plaintiffs set forth the three factors to be considered in determining retroactive application:

> (1) Whether the decision establishes new law, either by overruling clear past precedent or by dealing with an issue of first impression;
>
> (2) Whether retroactive application would further the purpose of the rule in question; and
>
> (3) Whether retroactive application would result in any inequity.

*Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1294 (7th Cir. 1975), *cert. den.,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976); *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The Fifth Circuit has stated, in considering the retroactive application of a new maritime law, "that the purpose of the rule should be given greater weight than the extent to which the parties relied on the law that existed before that rule was announced." *Matter of S/S Helene,* 529 F.2d 744, 748 (5th Cir. 1976).

The application of the two-year statute of limitations in this action does not establish new law. The decision of the Fifth Circuit in *Hudak,* was handed down on August 26, 1974, more than one-year before this action was commenced. As to the second factor noted above, the Court has found that Georgia's blue-sky provision more nearly effectuates the goals of the federal securities laws than does the state's common law fraud provision. Finally, the application of the two-year limitation period will not result in any inequity to the plaintiffs, since it is undisputed that it was the law at the commencement of this suit. It is clear that plaintiff was not relying on a longer limitation period and would not be prejudiced by its retroactive application. The two-year statute of limitations is applicable to the present action.

When a state limitation period is applied in an action for violating federal securities law, federal law determines when the limitation period begins to run. *Sargent,* 492 F.2d at 758; *Hooper v. Mountain States Securities Corp.* The plaintiffs, citing *Hudak* and *Sargent,* argue that the limitation period does not begin until there has been actual discovery of the fraud. This is not the law. In *Sargent,* the Court applied New York's six-year limitation period applicable to 10b–5 suits. The comment quoted by plaintiff was mere dicta and not relied on by that court in its decision. Similarly, the reference in *Hudak* to actual discovery is dicta, since the parties there agreed on the time of the discovery. More important is the Court's authority for its dicta. In *Azalea Meats v. Muscat,* 386 F.2d 5, 8–9 (5th Cir. 1967), relied on by the Court in *Sargent,* discovery of the fraud was defined as, "either actual knowledge or notice of facts which, in the exercise of due diligence would have led to actual knowledge of the violation." This standard was also cited with approval in *Aboussie v. Aboussie,* 441 F.2d 150, 156 (5th Cir. 1971).

The adoption by this Court of the "due diligence" test does not settle the law to be applied to the present facts. Before the facts may be evaluated, the standard to be applied under the due diligence test must be determined. There is support for a negligence standard being applied. "[W]ith regard to misrepresentations, the question is

whether a reasonable investor, in light of the facts existing at the time of the misrepresentation *and in the exercise of due care,* would have been entitled to rely upon the misrepresentation" *Clement A. Evans & Co. v. McAlpine,* 434 F.2d 100, 103 (5th Cir. 1970), *cert. den.* 402 U.S. 988, 91 S.Ct. 1660, 29 L.Ed.2d 153 (1971) quoting from *City National Bank of Fort Smith, Ark. v. Vanderboom,* 422 F.2d 221, 230 (8th Cir.), *cert. den.,* 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970). (Emphasis supplied in *McAlpine* ). Or as the Second Circuit stated, "The party seeking protection under this [due diligence] doctrine must have exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud." *Morgan v. Koch,* 419 F.2d 993, 997 (2d Cir. 1969).

■ With the imposition of a *scienter* requirement in § 10(b) and Rule 10b–5 cases by *Hochfelder,* a reexamination of the due diligence standard was needed. In *Dupuy v. Dupuy,* 551 F.2d 1005 (5th Cir. 1977), the Fifth Circuit Court of Appeals discussed the effect of *Hochfelder* on the diligence required from a plaintiff in § 10(b) litigation. Two factors in that Court's decision to change the standard to which plaintiffs are held are especially persuasive. "If it is fairer for a judicially allocated loss to fall upon the more culpable actor under tort law, the judicially created remedial system for the Securities Act can respond to similar notions of equity without disrupting the legislative scheme." *Id.* at 1019. Secondly, the Court noted that the principle of due diligence provides a mechanism for limiting potential liability. This limitation operates to protect individuals from the tremendous liability which might result from their accidental negligence. "With the scienter requirement, liability will be imposed only upon reckless or intentional wrongdoers, reducing substantially the risk on most actors in securities transactions." *id.* The Tenth Circuit has argued that requiring both proof of intentional or reckless misconduct by the defendant and a lack of negligence by the plaintiff would limit 10b–5 recoveries to the "extraordinary" case. *Holdsworth v. Strong,* 545 F.2d 687, 693 (10th Cir.

1976). Although *Dupuy* is concerned with the requirements of a plaintiff's cause of action, the rationale applies equally as well to the present limitation question. In determining the point at which a statute of limitation begins to run a court is essentially denominating the point at which a cause of action accrued. In judging due diligence the Court should ask whether the plaintiff, "intentionally refused to investigate 'in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow' W. Prosser § 34 at 185 (1971)." *Dupuy,* 551 F.2d at 1020.

Plaintiffs argue that after the initial fraudulent misrepresentations, the defendants actively sought to conceal their wrongdoing. Successful concealment of fraud should not be rewarded by making the original cause of action time-barred. By invoking the federal equitable tolling doctrine, plaintiffs seek to estop the defendants from asserting the statute of limitations defense. Specifically, the plaintiffs feel that assurances of amicable settlement by the defendants in late 1973 and early 1974 delayed the commencement of this action.

■ The federal equitable tolling doctrine is applicable to cases filed under the federal securities law. *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir. 1972). However, by adopting the due diligence standard outlined in *Dupuy,* this Court has allowed for the consideration of any concealment. Rather than tolling the statute of limitations, defendants' conduct bears on the determination of when the plaintiff knew or should have known of the alleged fraud. This too is an equitable doctrine:

Read into every federal statute of limitations, including the adoption of an analogous local statute of limitations, is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could

have discovered, the basis of the lawsuit. *Holmberg v. Armbrecht,* 327 U.S. 392, 396–97, 66 S.Ct. 582, 90 L.Ed. 743 (1946), *Tomera v. Galt,* 511 F.2d 504, 410 (7th Cir. 1975).

*Fitzgerald v. Seamans,* 180 U.S.App.D.C. 75, 83, 553 F.2d 220, 228 (1977). By adopting this policy, the Court promotes the remedial policy expressed by Congress in enacting securities legislation, *Vanderboom v. Sexton,* 422 F.2d at 1240, without rewarding wrongdoing by defendants. Fraudulent concealment is, "simply one vital factor in answering when the fraud was, or could have been discovered." *Tobacco and Allied Stocks v. Transamerica Corp.,* 143 F.Supp. 323, 329 (D.Del.1956), aff'd, 244 F.2d 902 (3d Cir. 1959).

A motion to dismiss for failure to state a claim upon which relief can be granted is an appropriate method of raising the statute of limitations defense. *Mann v. Adams Realty Co., Inc.,* 556 F.2d 288 (5th Cir. 1977). When matters outside the pleadings are before the court on such a motion, it is treated as one for summary judgment. Rule 12(b), Fed.R.Civ.P. In considering the allegations of this action, the Court is well aware of the difficult burden a movant faces to support a motion for summary judgment. On a motion for summary judgment, a court's function is limited to a determination of whether there is an issue of fact to be tried. Rule 56(c), Fed.R.Civ.P. In order to make this determination, the trial court must view evidence in the light most favorable to the party opposing the motion. *United States v. Hangar One, Inc.,* 563 F.2d 1155 (5th Cir. 1977).

In the present action there are numerous facts which are undisputed. It is clear that plaintiffs contacted defendants Cohen and Smith, Cohen concerning the commencement of a suit. However, the nature of the action then considered is strongly disputed. It is clear that plaintiffs heard rumors of double counting of inventory and mismanagement prior to September 4, 1973. It is not clear whether these rumors should have led plaintiffs to a dis-covery of the alleged fraud. It is not clear what effect later misleading financial reports had upon the plaintiffs. It is clear that plaintiffs met with one or more present or former employees of Barwick during 1972 and 1973. However, the information related to the plaintiffs and the inferences to be drawn therefrom are in dispute. Other related questions of fact abound in this action.

The question of the exercise of due diligence is especially inappropriate for a determination as a matter of law.

"The concept of due diligence is not imprisoned within the frame of a rigid standard; it is protean in application . . . . Inevitably the factual issue of due diligence involves, to some extent at least, the state of mind of the person whose conduct is to be measured against this test and it is simply not feasible to resolve such an issue on motion for summary judgment."

*Azalea Meats, Inc.,* 386 F.2d at 9–10; *Johns Hopkins University v. Hutton,* 488 F.2d 912 (4th Cir. 1973), cert. den. 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). "A summary judgment may be improper even though the basic facts are undisputed if the parties disagree regarding the material factual inferences that properly may be drawn from these facts." *Lighting Fixture and Electrical Supply Company v. Continental,* 420 F.2d 1211, 1213 (5th Cir. 1969); *Winters v. Highlands Ins. Co.,* 569 F.2d 297, (5th Cir. 1978). With such factual issues remaining for determination, dismissal of this action at the present state of proceedings is inappropriate. The dismissal motions of all the defendants, with the exception of Cohen and Smith, Cohen are denied.

3. Plaintiffs' claims against defendants Cohen and Smith, Cohen do not arise under federal law. Plaintiffs, pleading in the alternative, assert that if their federal claims are time-barred, it is due to these defendants' failure to exercise reasonable skill, care and diligence in promptly commencing an action. Plaintiffs assert that the Court has jurisdiction over this cause of action under the doctrine of pendent jurisdiction.

The defendants have moved for dismissal based on a lack of subject matter jurisdiction.

The plaintiffs argue that their claims against Cohen and Smith, Cohen derive from the same "common nucleus of operative fact" as their federal claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Advocating judicial economy, plaintiffs contend their, "claims are such that [they] would ordinarily be expected to try them all in one judicial proceeding . . . ." *id.*

 The doctrine of pendent jurisdiction is one of discretion not of right. *id.* at 726, 86 S.Ct. 1130. Although some of the factual determinations regarding plaintiffs' federal claims are relevant to their claims against defendants Cohen and Smith, Cohen, the latter are not appropriate for the Court's exercise of pendent jurisdiction. This case is easily distinguishable from *Gibbs.* In that case plaintiff brought suit against the defendant union under § 303 of the Labor Management Relations Act. He sought to invoke that court's pendent jurisdiction for his state common law claims against the same defendant. In the present action, plaintiffs have asserted no federal claims against defendants Cohen and Smith, Cohen. Plaintiff asks this court to assert jurisdiction over not only a pendent claim, but a "pendent party" as well.

In support of their argument, plaintiffs cite the case of *Connecticut General Life Insurance Company v. Craton,* 405 F.2d 41 (5th Cir. 1968). Since the Fifth Circuit issued its decision in *Connecticut General,* the Supreme Court has twice considered this issue. In *Moor v. County of Alameda,* 411 U.S. 693, 715, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the Supreme Court declined ruling on the question of whether a district court has the power to hear a state law claim against a party as to whom there exists no independent basis for federal jurisdiction. The Court held that the district court did not err in refusing to exercise its pendent jurisdiction when an unsettled question of state law was involved and the likelihood of jury confusion was great.

These factors outweighed any possible economy resulting from trying all claims in a single proceeding. *id.* at 715–717, 93 S.Ct. 1785.

In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court addressed the question of "pendent parties". The fact that a party would not otherwise be before the Court was considered a very significant factor in a court's determination of jurisdiction. The Supreme Court said:

If the new party sought to be impleaded is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim.

*id.* at 18, 96 S.Ct. at 2422. The Court went on to set out a guideline for the exercise of discretion over a "pendent party":

In short, as against a plaintiff's claim of *additional* power over a "pendent party", the reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal judicial power *has* been extended by Congress.

*id.* at 17, 96 S.Ct. at 2421. The present action was brought under the federal securities law for fraudulent misrepresentation in the sale of securities. The only question relevant to the case against defendants Cohen and Smith, Cohen is the timeliness of the commencement of the action. The "common nucleus of operative facts" extends only to the question of how much the plaintiffs knew or should have known and the time such knowledge was acquired.

This is a complex case in which the likelihood of jury confusion is already great. The addition of an unrelated state law claim as well as an additional party increases the opportunity and likelihood for such confusion. The extent of the judicial economy gained from the exercise of the Court's pendent jurisdiction is not large since a similar case has already been filed in a state court. Judicial economy does not outweigh the adverse effects which would result if defendants Cohen and Smith, Cohen were

allowed to remain as parties. The motions to dismiss of defendants Cohen and Smith, Cohen are granted.

4. Finally, there are presently pending before the Court motions to strike extraneous matters submitted by defendants Barwick, Hewitt, Williamson, Woodbridge, Kellar and Ernst & Ernst. The motions request that a report entitled, "Report of the Special Review Committee" be stricken from the record since it is irrelevant to the statute of limitation question and inadmissable as hearsay. The report was received by the Court in a letter from plaintiff's counsel dated February 17, 1978.

The motion to strike is premature. The report has played no part in the Court's determination up to the present. The motion to strike may be resubmitted when the factual determination of the statute of limitation question is to be rendered. Since this report was received by the Court, it has not yet been filed with the office of the clerk. It is hereby ordered that such report be filed with the clerk's office and be made a part of the record, its relevance and admissibility to be determined at a later time. This order has already been effectuated.

5. The Court realizes that this order has settled only a few of the pertinent questions relating to the action. With the determination of these issues, the action is now ready to proceed toward resolution. The file in this case is already voluminous. The questions presented by this action are complex by their very nature. Obfuscation by the parties is unnecessary and unwanted. In the future the parties should be mindful that like the squid they face the danger of being lost in their own ink.

Accordingly, the motions to dismiss filed by defendants E. T. Barwick, Barwick Industries Inc., M. E. Kellar, Kenneth L. Hewitt, B. A. Talley, Fred L. Williamson, Henry S. Woodbridge, and Ernst & Ernst are DENIED. The motions to dismiss by defendants I. T. Cohen and Smith, Cohen, Ringel, Kohler, Martin, & Lowe are GRANTED. Plaintiffs' motion for leave to amend their complaint is GRANTED. The Court reserves it ruling on the motion to strike extraneous matters by defendants Barwick, Hewitt, Williamson, Woodbridge, Kellar and Ernst & Ernst until a more appropriate time.

SO ORDERED, this the 10th day of May, 1978.