Kemper Penney PANAYOTOPULAS,
Plaintiff,

v.

CHEMICAL BANK et al., Defendants.

No. 78 Civ. 565 (VLB).

United States District Court,
S. D. New York.

Jan. 11, 1979.

Schwenke & Devine, New York City, for plaintiff.

Zalkin, Rodin & Goodman, New York City, for defendants.

## MEMORANDUM ORDER

BRODERICK, District Judge.

### I

Defendant Chemical Bank ("defendant") seeks dismissal, pursuant to Rule 12, Fed.R. Civ.P., of plaintiff's cause of action charging defendant with violation of Section 7 of the Securities & Exchange Act of 1934[1]

---

1. 15 U.S.C. § 78g. Section 7 in relevant part provides:

Margin requirements

\*    \*    \*    \*    \*    \*

(c) It shall be unlawful for any member of a national securities exchange or any broker or dealer, directly or indirectly, to extend or maintain credit or arrange for the extension or maintenance of credit to or for any customer—

(1) on any security (other than an exempted security), in contravention of the rules and regulations which the Board of Governors of the Federal Reserve System shall prescribe under subsections (a) and (b) of this section;

(2) without collateral or on any collateral other than securities, except in accordance with such rules and regulations as the Board of Governors of the Federal Reserve System may prescribe . . .

(d) It shall be unlawful for any person not subject to subsection (c) of this section to extend or maintain credit or to arrange for the extension or maintenance of credit for the purpose of purchasing or carrying any security, in contravention of such rules and regulations as the Board of Governors of the Federal Reserve System shall prescribe to prevent the excessive use of credit for the purchasing or carrying of or trading in securities in circumvention of the other provisions of this section. Such rules and regulations may impose upon all loans made for the purpose of purchasing or carrying securities limitations similar to those imposed upon members, brokers, or dealers by subsection (c) of this section and the rules and regulations thereunder. . . .

("the Act") and Regulation U [2] promulgated thereunder.

Defendant challenges plaintiff's claim to an implied private right of action under Section 7 and Regulation U, in light of the 1970 amendment adding Paragraph (f) to Section 7,[3] and Regulation X [4] promulgated thereunder. Defendant also urges that plaintiff's action is barred by the applicable statute of limitations.

For the reasons hereafter stated, defendant's motion is denied.[5]

## II

Prior to the effective date of the addition of Section 7(f) to the Act, the Second Circuit held, in the context of an alleged violation by a securities broker of Section 7 and Regulation T [6] promulgated thereunder, that an implied private right of action exists under Section 7:

Although the congressional committee report which recommended the enactment of Section 7 indicates that the protection of individual investors was a purpose only incidental to the protection of the overall economy from excessive speculation, it has been recognized in numerous cases since that time that private actions by market investors are a highly effective means of protecting the economy as a whole from margin violations by brokers and dealers.

*Pearlstein v. Scudder & German*, 429 F.2d 1136, 1140 (2d Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971) *("Pearlstein I"). See also Serzysko v. Chase Manhattan Bank*, 290 F.Supp. 74 (S.D.N.Y.1968), *aff'd*, 409 F.2d 1360 (2d Cir.), *cert. denied*, 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969). The *Pearlstein I* court placed upon brokers the sole responsibility for compliance with Section 7. 429

---

**2.** 12 C.F.R. § 221. Regulation U in relevant part provides:

§ 221.1 General Rule.

(a) *Purpose credit secured by stock.* (1) Except as provided in subparagraph (2) of this paragraph (a) and in § 221.3(q) no bank shall extend any credit secured directly or indirectly by any stock for the purpose of purchasing or carrying any margin stock in an amount exceeding the maximum loan value of the collateral, as prescribed from time to time for stocks in § 221.4 (the Supplement to Regulation U) and as determined by the bank in good faith for credit subject to § 221.3(s) for any collateral other than stocks: . . .

**3.** 15 U.S.C. § 78g(f)(1). Section 7(f)(1) in relevant part provides:

(f)(1) It is unlawful for any United States person, or any foreign person controlled by a United States person or acting on behalf of or in conjunction with such person, to obtain, receive, or enjoy the beneficial use of a loan or other extension of credit from any lender (without regard to whether the lender's office or place of business is in a State or the transaction occurred in whole or in part within a State) for the purpose of (A) purchasing or carrying United States securities, or (B) purchasing or carrying within the United States of any other securities, if, under this section or rules and regulations prescribed thereunder, the loan or other credit transaction is prohibited or would be prohibited if it had been made or the transaction had otherwise occurred in a lender's office or other place of business in a State.

**4.** 26 C.F.R. § 224. Regulation X in relevant part provides:

§ 224.2 General rule.

(a) *Credit obtained from within the United States.* A borrower shall not obtain any purpose credit from within the United States unless he does so in compliance with the following conditions:

\*    \*    \*    \*    \*    \*

(3) Credit obtained from a bank shall conform to the provisions of Part 221 of this chapter (Regulation U), except for § 221.2(i). Except for such section, Part 221 of this chapter (Regulation U) is hereby incorporated in this part (Regulation X). . . .

**5.** The factual and procedural history of this action is set forth in my Memorandum Order dated August 25, 1978. In my August 25, 1978 Order, I denied Chemical Bank's motion for dismissal of plaintiff's claims brought under Section 10(b) of the Securities and Exchange Act of 1934, and I directed the parties to brief the issue of the existence of a private right of action under Section 7.

**6.** This case involves Regulation U (12 C.F.R. § 221), which regulation prescribes rules for "Credit By Banks For The Purpose Of Purchasing Or Carrying Margin Stocks." Regulation T (12 C.F.R. § 220) prescribes rules for "Credit By Brokers and Dealers." While Regulation U and Regulation T do not parallel each other in every respect, and in fact differ markedly in certain respects, for purposes of the issues presently before me, the analysis under each applies to the other.

F.2d at 1141. The court's premise was that Section 7 prohibited the broker from extending credit beyond the legal limit, but that Section 7 did not forbid customers from accepting such credit.

Section 7(f) (and Regulation X promulgated thereunder) made it a violation not only to extend credit beyond the margin limits prescribed by the Federal Reserve Board but also to accept such credit in violation of the margin requirements.[7]

Upon reargument in *Pearlstein v. Scudder & German,* 527 F.2d 1141, 1145 n.3 (2d Cir. 1975) ("*Pearlstein II* "), after paragraph (f) had been added to Section 7, the court of appeals expressed doubts about the "continued viability of the rationale of" its decision in *Pearlstein I.* The issue is before me now. To what extent has *Pearlstein I* been undermined by the addition of Section 7(f)? Since borrower and lender now are potentially equally culpable, when, if at all, does a private right of action by the borrower against the lender still exist under Section 7?

■ I conclude that Section 7(f) and Regulation X modify the result in *Pearlstein I* to the extent that an implied private right of action exists under Section 7 if and only if (1) the borrower does not wilfully or intentionally accept such credit in violation of the margin limits, and (2) promptly after the borrower's discovery of non-compliance, he takes whatever action is practicable to remedy the non-compliance.

■ The Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), set out four factors to be considered in determining whether a private remedy may be implicit in a statute that does not expressly provide one:

1) Is the plaintiff within the class the statute was intended to protect?

2) Is there legislative intent either to create or to deny such a remedy?

3) Is a private remedy consistent with the legislative scheme?

4) Is the cause of action one traditionally relegated to state law, thereby making a federal remedy inappropriate?

In *Palmer v. Thomson & McKinnon Auchincloss, Inc.,* 427 F.Supp. 915 (D.Conn. 1977), decided after the addition of paragraph (f) to Section 7, the court held that Section 7 meets these criteria and that a private remedy does exist. The court in *Palmer* specifically held that a limited private right of action under Regulation T still exists under Section 7 after enactment of paragraph (f) and promulgation of Regulation X. The court held that the 1970 amendments to the Exchange Act were part of an effort at national credit regulation; found no intent to make small, unsophisticated investors responsible for compliance with the margin requirements;[8] and suggested that Regulation X was applicable only to borrowers who falsely, wilfully, or intentionally evaded the provisions of the Act. *Id.* at 921.

■ Section 7 was enacted primarily to stabilize and regulate credit markets. The protection of the small investor (or borrower) was foreseen as a by-product of achieving these main purposes. However, courts have consistently recognized that private actions by investors are an effective means

---

7. The Board of Governors of the Federal Reserve System is authorized by Section 7 to prescribe rules and regulations with respect to the amount of credit that may be initially extended and subsequently maintained on any security. Pursuant to this authority the Board has promulgated rules regulating the extension of credit by broker-dealers (Regulation T, 12 C.F.R. 220) and banks (Regulation U, 12 C.F.R. 221). When Section 7(f) was added, Regulation X was promulgated (12 C.F.R. 224). Regulation X makes it a violation to obtain or receive credit in a transaction not conforming to Regulations T or U.

8. The court in *Palmer* found nothing in the legislative history of the Section 7 amendment to suggest Congress intended to overrule *Pearlstein I.* Rather Congress intended to prevent the infusion of unregulated foreign credit into American securities markets. There was doubt as to whether Section 7(c) could effectively reach such transactions. Congress felt it most feasible to place a duty on the investor to comply with the initial margin requirements if his sources of credit were outside the United States. 427 F.Supp. at 920.

of protecting the national economy from margin infringements; without the availability of private remedies the violation is not likely to be reported, and the likelihood of administrative enforcement is therefore remote.

■ The *Palmer* court held that at least with respect to good faith borrowers private actions continue to be consistent with the intent and purpose of the Act. This is not an area traditionally relegated to state authority; so federal remedies are entirely appropriate.

Regulation X in part (12 C.F.R. 224.6(a) (1977)) states that "[a]n innocent mistake made in good faith by a borrower in connection with the obtaining of credit shall not be deemed to be a violation of this part (Regulation X) if promptly after discovery of the mistake the borrower takes whatever action is practicable to remedy the noncompliance." Since an innocent, good faith borrower may not even be in violation of Section 7 or Regulation X, the court in *Palmer* found no reason to deprive the investor of his cause of action.

This resolution of the issue presents no conflict with the congressional purpose of national credit regulation, and continues a highly effective means of protecting the economy from margin violations. *See Pearlstein I, supra,* 429 F.2d at 1140.

I concur with the analysis in *Palmer*[9] and find those principles equally as applicable to Regulation U as to Regulation T.

■ In *Utah State University of Agriculture and Applied Science v. Bear, Stearns & Co.,* 549 F.2d 164, 169–170 (10th Cir. 1977), cert. denied, 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1978), the court of appeals rejected a finding of civil liability of a broker to a borrower under Regulation T even where the borrower obtained the cred-

it innocently and, upon learning of the violation, made payment and thereby avoided criminal liability. The court found the difference in criminal culpability between the broker and borrower no reason to impose civil liability on the broker. Margin requirements, according to the *Utah State* court, were imposed to protect the general economy, not to give the customer a free ride at the expense of the broker. To do otherwise, the court reasoned, would place the customer in a " '[H]eads I win—tails you lose' position. If the stock goes up, he takes his profit. If it goes down, he recovers his loss from the broker." *Id.* at 170.

■ In my judgment the court in *Utah State* misconstrued Regulation X. Under Regulation X the borrower may not await the final disposition of his investment and then choose between profits or civil litigation. If the borrower intentionally, or wilfully obtained credit above the prescribed limit he is foreclosed from ever bringing suit. If the borrower innocently obtained illegal credit, he must act promptly upon discovery of the illegality to remedy the noncompliance or be barred from suit. There is no free ride. The only protection an innocent investor has is a Section 7 private remedy subject to the defenses available to lenders and subject to the conditions enumerated in this opinion.[10]

The approach developed by the court in *Palmer, supra,* and adopted herein respects the congressional aims of stabilizing the national securities markets, of subjecting investors to Section 7 liability where their knowledge and sophistication demand that they should be held responsible, and of protecting small investors who innocently accept illegal credit. Under this approach stringent and vigorous enforcement of the Securities and Exchange Act will be facilitated.[11]

---

**9.** *But see Nussbacher v. Chase Manhattan Bank, N.A.,* 444 F.Supp. 973, 978–981 (S.D.N.Y. 1977); *Bell v. J. D. Winer & Co., Inc.,* 392 F.Supp. 646 (S.D.N.Y.1975).

**10.** *See also McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 429 F.Supp. 359, 364–65 (N.D. Ga.1977); *Freeman v. Marine Midland Bank—*

*New York,* 419 F.Supp. 440, 452 (E.D.N.Y. 1976).

**11.** Defendants may raise triable issues of fact concerning the borrower's good faith and knowledge of the margin rules. This defense was unavailable prior to enactment of Section 7(f). *Pearlstein I,* 429 F.2d at 1141.

### III

Defendant contends that plaintiff's Section 7 claims are barred by the statute of limitations.

■ There is no express period of limitation for implied rights of action under Section 7, and state law provides the applicable limitations period. *Hornblower & Weeks-Hemphill, Noyes v. Burchfield,* 366 F.Supp. 1364, 1367 (S.D.N.Y.1973). In choosing the state statute of limitations to apply in actions under federal law, "we must look to state court interpretations of the statutes 'to see where the claim fits into the state scheme.'" *Klein v. Bower,* 421 F.2d 338, 344 (2d Cir. 1970).

In *Klein, supra,* at 343–344, the court of appeals held that in claims alleging violations of Section 7 and Regulation T, N.Y.C.P.L.R. § 213(9) (actions based upon fraud) or N.Y.C.P.L.R. § 214(2) (actions to recover upon a liability, penalty or forfeiture created or imposed by statute) may be applicable. Section 213(9) provides for a six year period (commencing upon the time the cause of action accrued) or a two year period (commencing upon the time plaintiff discovered or with reasonable diligence could have discovered the fraud), whichever is longer. N.Y.C.P.L.R. § 203(f). Section 214(2) provides for a three year period commencing upon commission of the alleged statutory violation. The court in *Klein* found it unnecessary to choose between the two provisions since plaintiff's claim was barred under either section.

In *Hornblower & Weeks-Hemphill, Noyes v. Burchfield, supra,* 366 F.Supp. at 1367–1368, the court applied the three year period of N.Y.C.P.L.R. § 214(2) to a Section 7 claim that contained no element of fraud. The court held that "[m]argin violations were of course unknown to the common law, and the authorities indicate clearly that where a cause of action would not exist but for the presence of a statute which provides a basis for it, the suit is upon 'a liability . . . created or im-

posed by statute' within § 214(2)." The court recognized, however, that in circumstances where margin violation claims constitute part of a Section 10(b) claim under the Exchange Act, the fraud limitations period in N.Y.C.P.L.R. § 213(9) might be applicable.

I agree with the *Hornblower* analysis. Plaintiff's action here is rooted primarily in fraud, and the Section 7 claim involves conduct which allegedly violates Section 7 and which, at the same time, was integral to the alleged Section 10(b) violation. N.Y.C.P. L.R. § 213(9) has long been recognized as the appropriate period of limitations for Section 10(b) claims. The longer period is applicable in Section 10(b) cases because the clandestine nature of the defendant's acts comprising the violation precludes immediate discovery by plaintiff. Clearly, where no fraud is alleged, N.Y.C.P.L.R. § 214(2) is applicable to Section 7 claims. However, where the two claims are intertwined, as they are here, it would be incongruous to apply N.Y.C.P.L.R. § 213(9) to the Section 10(b) claim and N.Y.C.P.L.R. § 214(2) to the Section 7 claim. To do so would affirm plaintiff's right to a Section 7 action but effectively cut off the right by applying the shorter period of limitations. Fraud is equally difficult to discover in both the inducement to participate in a scheme violative of the securities laws and in the illegal extension of credit to culminate the fraudulent scheme. Plaintiff should therefore be entitled to the benefit of the longer period of limitations for her Section 7 claim.[12]

■ Accordingly, I hold that N.Y.C.P. L.R. § 213(9) provides the appropriate period of limitations. Plaintiff's action may be maintained if it was commenced within six years from accrual of the cause of action, or within two years from the time when the facts of the alleged fraud were discovered or with reasonable diligence could have been discovered, whichever is longer. N.Y. C.P.L.R. § 213(9) and N.Y.C.P.L.R. § 203(f). *See Klein v. Shields & Company,* 470 F.2d 1344, 1346–47 (2d Cir. 1972); *Klein v. Au-*

12. Plaintiff's complaint alleges sufficient interrelation of fraud and Section 7 claims to support invocation of the N.Y.C.P.L.R. § 213(9) period of limitations.

*chincloss, Parker & Redpath,* 436 F.2d 339, 341 (2d Cir. 1971). Plaintiff's action is therefore timely, because it was commenced within the prescribed period. Of course, any right of action by plaintiff is subject to the substantive limitations set forth in Part II of this opinion.

SO ORDERED.